## RICHARDSON v. STATE

[No. 72, September Term, 1959.]

*Decided December 10, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*George L. Russell, Jr.,* for appellant.

*Shirley Brannock Jones, Assistant Attorney General,* with
whom were *C. Ferdinand Sybert, Attorney General, Saul A.
Harris, State's Attorney for Baltimore City,* and *James W.
Murphy, Assistant State's Attorney for Baltimore City,* on
the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Charles Richardson was convicted of grand larceny in the
Criminal Court of Baltimore, and, after receiving a sentence
of three years' confinement, has appealed. His court-ap-
pointed lawyer, who did not represent him below, has shown
ability and diligence in presenting everything in his favor
that the record permits.

The appellant's initial assignments of error are that the
ownership of the property alleged by the indictment to have
been stolen was laid in Horn's Motor Express, Inc., a corpo-
ration (Horn's), while the State proved that the ownership
was actually in the Pleasant Valley Shoe Company, also
known as the Kiddy Cub Shoe Company (Shoe Company) of
Westminster, and failed to establish the fact that Horn's
was a corporation. This Court stated in *State v. King,* 95
Md. 125, 128, 51 A. 1102, the reason that a sufficient alle-
gation of ownership is an essential requisite in a larceny in-
dictment in that the court must be able to determine judicially
that the property alleged to have been stolen was that of an-
other and not the property of the accused. and also that the

defendant is entitled to be informed of the exact accusation against him.[1] However, it is generally held that in a prosecution for larceny, an allegation of the ownership of stolen goods is supported by proof of any legal interest or special property in the goods, as, for instance, where the person named in the indictment is in lawful possession as a bailee or common carrier. 52 C.J.S. *Larceny,* Sec. 99 b; 2 Wharton, *Criminal Law* (12th Ed.), Secs. 1172, 1179; *State v. Brown,* 60 A. 1117 (N.J.); 2 Bishop, *New Criminal Law;* Sec. 789; *Latham v. Comm.,* 37 S. E. 2d 36 (Va.). In the instant case, the property alleged to have been stolen had been delivered by the Shoe Company to Horn's, through whom it shipped all of its merchandise, to be transported to a customer of the Shoe Company in Georgia; and the property was stolen from one of Horn's sealed trailers while backed against that company's platform in Baltimore. Under the above circumstances, the State could, we think, properly lay the ownership of the property in Horn's.

We turn now to the alleged failure of the State to establish the corporate existence of Horn's. It is fundamental, as we have indicated above, that in a prosecution for larceny one of the essential elements to be proved is the ownership of the stolen property; and, when ownership is claimed to be in a corporation, the claim must be supported by evidence. 23 C.J.S., *Criminal Law,* Sec. 921; *Nelson v. U. S.,* 142 A. 2d 604 (Mun. Ct. Appls. D. C.); *People v. Buckman,* 116 N. E. 835 (Ill.). Erling C. Lamp testified that he was the "[t]erminal manager for Horn's Motor Express Inc.," which was located at 3101 Lohrs Lane. Alvin London, who was "connected" with the Shoe Company stated that that company used the "Horn Motor Express Company" to ship all of its shoes; that he received a letter from "Horn's Motor Express Company" stating that the property named in the indictment had been stolen; that certain of the property alleged in the indictment to have been stolen, and which he was then identi-

---

1. For the proper method of alleging the ownership of stolen property when the owner is an incorporated or unincorporated body, see State v. Barrett, 148 Md. 153, 128 A. 744.

fying, had been delivered to "Horn's Motor Express" for transportation. Counsel for the appellant, in his first question on cross-examination of this witness referred to the "Horn Motor Express Company," and quite frequently thereafter referred to "Horn's" without, at any time, objecting to or suggesting any failure to prove that company's corporate existence. Of course, the most satisfactory proof of corporate entity is the production of the articles of incorporation of a company, duly and properly authenticated, coupled with additional proof that the company is engaged in conducting business under its corporate name. But in a criminal prosecution, it is generally held that such formal proof is not required. 1 Underhill, *Criminal Evidence* (5th Ed.), Sec. 107; 1, 2, Wharton, *Criminal Evidence* (12th Ed.), Secs. 278, 609; 23 C.J.S. *Criminal Law,* Sec. 921. It has frequently been held that in certain types of cases, corporate existence may be proved orally and by general reputation. We think the proof in the instant case, while not of the most satisfactory nature, is sufficient, under the authority of the best reasoned cases, to support an inference that Horn's Motor Express Inc. was a corporation. Mr. Lamp said that he was the terminal manager of the company bearing the exact name, last mentioned. Code (1957), Article 23, Section 5, Subsections (a) (1) and (c) provides that the name of any corporation shall indicate that it is a corporation, and this provision shall be deemed to have been complied with if the name contains the word "incorporated" or ends with an abbreviation thereof or the word "company"; and that any person owning, operating or directing an unincorporated organization, firm or association which includes in its name the word incorporated or any abbreviation thereof shall be guilty of a misdemeanor. The fact that Horn's Motor Express, Inc., ended with the abbreviation "Inc." coupled with the many occasions in the testimony where it was referred to, by appellant's counsel and others, as Horn's Motor Express *Company* (emphasis supplied) and the further fact that, during the entire trial, there was not the slightest intimation that Horn's Motor Express, Inc., was not a corporation, permitted and justified the inference that that company was incorporated.

As was stated by the Supreme Court of Nebraska, in *Peterson v. State*, 212 N. W. 610, a robbery case in which it was contended that there was no proof that the owner of the money taken was a corporation as alleged in the information:

> "While no one testified that the Alamito Dairy Company was a corporation, and no articles or records were offered to establish the fact, the corporate entity of the concern was sufficiently shown by incidental testimony. The employee from whom the money and checks were taken testified that he was working for the Alamito Dairy Company; speaks of being at the Alamito Dairy plant; says that he had the Alamito Dairy deposit in his possession. * * * Defendant himself testified that he was not in the vicinity of the Alamito Dairy on the day before the robbery, and declared that he had nothing to do with the Alamito robbery. The cashier of the company swore that she had been employed by the Alamito Dairy Company for eight years, had been cashier for six years, and had made up the deposit which was taken. This was enough to show that the concern was going and functioning as a corporation."

See also *United States v. Amedy,* 11 Wheat. 392, 6 L. Ed. 502; *People v. Steffner,* 227 P. 690, 696 (Cal.); *Miller v. People,* 21 P. 1025 (Colo.); *Mears v. State,* 104 S. W. 1095 (Ark.) where a statute authorized proof of corporate existence by general reputation. Cf. *Bimbo v. United States,* 82 F. 2d 852, 855.

And in *United States v. Scoblick,* 225 F. 2d 779, 782, (C. A. 3rd), where it was contended for the first time on appeal, as in the case at bar, that there was no proof of the corporate existence of Scoblick Bros., Inc., one of the defendants, or its responsibility for the acts of the individual defendants, the Court, in rejecting the claim, said:

> "The witness Senio testified that loans and checks were always signed 'Scoblick Bros., Inc., by James,

Frank or Anthony Scoblick', and that 'Scoblick Bros., Inc.' was the name of their business entity. We think this was sufficient to show the corporate identity and responsibility of Scoblick Bros., Inc., especially since the question was first raised on appeal. Appellants did raise questions in the court below concerning the corporate existence of the Mayfield State Bank. If there had been any serious question about the corporate existence of Scoblick Bros., Inc., it should have been raised at the same time."

We have examined all of the cases cited by the appellant on this point and find nothing in them that is in conflict with what we have said above.

The only other questions raised by the appellant are that the proof was insufficient to support a finding of guilty of grand larceny and the court violated the best evidence rule in admitting in evidence four exhibits, all of which were children's shoes that had been purchased from the accused a short time after the alleged larceny. These contentions, we think, may properly be considered together.

The State offered proof that on or about February 13, 1959, seven large cases or cartons of children's shoes (all reference to shoes hereinafter made will be to children's shoes), some of which contained as many as 36 pairs thereof, were stolen from a sealed trailer belonging to Horn's. The shoes had been turned over to Horn's by the Shoe Company for ultimate delivery to its customer, Ware's, in Georgia. The manufacturer's price of the seven cartons of shoes was approximately $420. The shoes retailed for $4.00, per pair. That shortly thereafter, the accused was offering for sale, and did sell, quite a number of shoes. Donald Lide, who purchased four pairs from the defendant, saw a large box or carton of shoes in the rear of an automobile from which the appellant sold him the ones that he purchased. One pair of these shoes was offered by the State at this time as State's Exhibit 1 for identification. The defendant showed James

Gladney a "big box of shoes" in the back of an automobile and tried to sell him some of them. Gloria DeNeal and Anna Moore worked at the same place. The appellant approached them, while at work, to purchase shoes from him, which he was carrying in a shopping bag. After showing them what he had in the shopping bag, he told them that he had a whole lot more and went out and returned with a "big cardboard box" and brought them in. Gloria purchased one pair, which was introduced as State's Exhibit 2 for identification, and Anna bought two pairs, State's Exhibits 3 and 4 for identification. Mr. London from the Shoe Company then testified, without objection, that Exhibit 1 had been manufactured by that company, it was stock number 8601 and there were two pairs of the same size and stock number in the shipment to Ware's through Horn's; that Exhibit 2 was "our" number 2044 and had also been manufactured by "us" and there were twelve pairs within the size range of the exhibit showing the shipment to Ware's; that Exhibit 3 had been manufactured by "us," being "our" style number 2339, and there were three pairs of the same size in the shipment; and that with reference to Exhibit 4 "we" manufacture them, but he could not "pin-point" them as being in the shipment to Ware's. This witness further testified, without objection, that during his testimony he had been reading from a paper on which he had copied the information marked on the shoes, and, upon comparing it with the original order from Ware's, this information corresponded exactly as to Exhibits 1, 2 and 3, but as to Exhibit 4, while the shoes had been manufactured by the Shoe Company and were within the size range of those ordered by Ware's, the original order, from Ware's did not call for them. This, however, did not preclude, in the witness' opinion, the possibility that these shoes were in the shipment, as there could have been a mistake in filling the order or a substitution of these shoes for those actually ordered. Thereafter, the four exhibits were formally offered in evidence, to which defendant's counsel entered a "formal objection." The court overruled the objection and admitted all of the exhibits. The appellant now contends their ad-

mission was a violation of the best evidence rule,[2] as it was certain there was a bill of lading covering the shipment and the bill of lading was the best evidence. This objection comes too late. If we assume, as contended by the defendant, that the bill of lading was the best evidence and the court below upon seasonable objection (or motion to strike when it first became apparent from what papers the witness was testifying) would have required the production of the bill of lading or some proper reason for its non-production, we have no such objection or motion to strike. The appellant cannot permit secondary evidence to be introduced without objection and then raise the question of a violation of the best evidence rule for the first time on appeal. Even if evidence be clearly inadmissible and it is introduced without objection, it is given the probative force as if it were competent. *Hall v. State,* 213 Md. 369, 374, 131 A. 2d 710; *Martin v. State,* 203 Md. 66, 73, 100 A. 2d 808. We have no doubt that, under the above circumstances, the exhibits were properly admitted. If the admission of Exhibit 4 approaches the borderline of admissibility, *vel non,* this fact, we think, affects the weight of the exhibit and not its admissibility.

The proof as set out above, which the trier of the facts below was at liberty to believe, and the proper inferences to be drawn therefrom, clearly and amply, support a finding of all of the constituent elements of grand larceny by appellant.

*Judgment affirmed.*

---

2. For statements of the best evidence rule in Maryland as applied in criminal cases, see Corens v. State, 185 Md. 561, 569, 45 A. 2d 340; Gray v. State, 181 Md. 439, 444, 445, 30 A. 2d 744.