## CHARLES A. BROWN *v.* STATE OF MARYLAND

[No. 98, September Term, 1978.]

*Decided May 4, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*James F. Fitzgerald* for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Michael Gallavan, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Having been found guilty in the Circuit Court for Prince George's County of obtaining an automobile by the false pretense of a bad check in violation of Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 142 (The Worthless Check Act),[1] Charles A. Brown here seeks a reversal for errors he claims were made by the trial court as to amendment of the charging document and the sufficiency of the evidence. The sole question we need consider in this appeal is whether the trial court erred when it granted the State's motion to amend the charging document. We conclude that an amendment of the nature obtained by the State here was impermissible without Brown's consent and, as a consequence, his conviction and sentence must be reversed.

Factually, in this Court, there is little in dispute between the parties. On the evening of January 29, 1975, appellant Brown visited Foley Ford, Inc., in Upper Marlboro, Maryland, and purchased from it a new 1975 Ford Ranchero motor vehicle. In full payment for his purchase appellant tendered the automobile dealer his personal check drawn on the Suburban Trust Company in the amount of $5462.80 and, in return, received possession of the Ford. When the bank, in refusing to honor the draft, returned it to Foley Ford with the notation "account closed" and the check was not thereafter made good, the automobile dealer's general manager initiated the issuance of an arrest warrant that, by its provisions pertinent to this appeal, charged Charles A. Brown

> did on or about January 29, 1975 at Foley Ford, Inc., 5701 Crain Hwy., Upper Marlboro, Md., unlawfully

---

1. Effective July 1, 1979, this enactment will be replaced by the bad check subheading of the recently enacted revision of the laws concerning theft-related offenses. 1978 Md. Laws, ch. 849, § 1. The new bad check provisions now appear at Md. Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.), Art. 27, §§ 140-144.

with intent to cheat and defraud the said [Foley Ford, Inc.,] of *Five Thousand Four Hundred Sixty Two Dollars and Eighty Cents ($5462.80) current money of the United States* by means of a check drawn on the Suburban Trust Co., Suitland, Maryland, which said bank was not indebted to the drawer and said drawer did not provide for payment of same, said check was not paid [upon] presentation and returned marked Account Closed, and said check was not made good within ten (10) days.

The said defendant is hereby formally charged with violation of Code, Art. 27, Sec. 142, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State. [(Emphasis supplied.)]

Although this charging document was issued on February 19, 1975, Brown was not apprehended until September 15, 1977. Upon his appearance in the District Court of Maryland the defendant demanded a jury trial and the matter was transferred to the circuit court for such a proceeding. Shortly after the trial began on March 3, 1978, the assistant state's attorney interrupted his introductory statement to the jury and asked permission of the court to amend the charging document so as to change from cash to automobile the identity of what was allegedly obtained by use of the worthless check. Specifically, the motion asked that the charging document be amended so as to substitute for the portion italicized above, the following: "goods in the amount of $5,462.80 — one Ford Automobile." Over appellant's objection the motion was granted by the court and a notation was made on the docket reflecting this action. The defendant's consent to the change was neither obtained nor requested; however, the trial judge did offer to declare a mistrial and continue the case. This proposal was accepted by the appellant and, accordingly, the court, after discharging the jury, reset the matter for hearing on the following 21st of April.[2] At the second trial, which was conducted without

---

2. The appellant has not contended, and we think he could not successfully do so, that the amendment of the warrant in any way deprived him of his

the aid of a jury, Brown was found to be guilty of violating The Worthless Check Act and sentenced to a three-year prison term. This appeal followed.

Charging documents in this State now may be amended in the circuit courts of the counties and in the Criminal Court of Baltimore only in accord with Maryland Rule 713 that, effective July 1, 1977, provides: [3]

> a. *Generally.*
>
> Upon motion of either party or upon its own motion, the court may permit a charging document to be amended as to matters of form at any time before verdict. The court may permit a charging document to be amended as to matters of substance only with the consent of the parties.
>
> b. *Continuance.*
>
> The court shall grant the defendant an extension of time, adjournment or continuance if reasonably required by an amendment of a charging document.

Since, by this rule, a charging document may not be amended without the consent of the defendant if the change is one of substance, we pause to identify in general terms the distinction between what is form and what is substance in a

---

due process right to "have a copy of the . . . charge, in due time (if required) to prepare his defence." Md. Decl. of Rts., Art. 21; *see* U.S. Const. amends. VI & XIV; Md. Rule 713 b, in that the continuance resulting from the mistrial to which he consented provided him with ample opportunity to defend himself against the amended charging document.

3. For a history of the case law, statutory enactments, and court rules pertaining to the amendment of those criminal accusatory pleadings presently encompassed within the term "charging document," as defined under Maryland Rule 702 a, see the opinion authored by Judge Orth for the Court of Special Appeals in Gyant v. State, 21 Md. App. 674, 675-84, 321 A. 2d 815, 815-20, *cert. denied,* 272 Md. 742 (1974). Mention is made of the fact, however, that since that case was decided substantial change has been made in the Maryland Rules with regard to the nature of the amendments that are permitted. Effective July 1, 1974, the "character of the offense" test, which had been adopted effective July 1, 1973, was abandoned and the former "form and substance" test applicable to indictments and informations was made applicable to all circuit court-level charging documents. Effective July 1, 1977, there were some stylistic changes made, so at present the rule reads as quoted in the text. The counterpart of Rule 713 applicable in the District Court is Maryland District Rule 713.

criminal charging document. The difference was clarified in *Corbin v. State,* 237 Md. 486, 489-90, 206 A. 2d 809, 811 (1965), where it is noted that the characterization of the crime, as well as the essential facts that must be proved to make the act complained of a crime, constitutes substance — all else being form.[4] *See Thanos v. State,* 282 Md. 709, 716, 387 A. 2d 286, 289 (1978); *Kearney v. State,* 48 Md. 16, 24-25 (1877). In the context of their use in Rule 713, the words "form" and "substance" are opposites, the latter being that which is essential. What it is necessary to set out in all charging documents and, therefore, is substantive was explained by this Court in *State v. Lassotovitch,* 162 Md. 147, 159 A. 362 (1932), where it was pointed out that:

> Every charge or accusation, whether at common law or under statute, must include at least two elements: First, the characterization of the crime; and, second, such description of the particular act alleged to have been committed by the accused as will enable him to properly defend against the accusation. In statutory crimes, where the statute includes the elements necessary to constitute a crime, the first of these requirements is gratified by characterizing the offense in the words of the statute; the second requires such definite and specific allegations as reasonably to put the accused on notice of the particular act charged, to enable him to prepare a defense and plead the judgment in any subsequent attempted prosecution. [*Id.* at 156 [366].]

*Accord, State v. Canova,* 278 Md. 483, 498-99, 365 A. 2d 988, 997 (1976); *Corbin v. State, supra,* 237 Md. at 490, 206 A. 2d at 811; *Seidman v. State,* 230 Md. 305, 312-13, 187 A. 2d 109, 113-14 (1962), *cert. denied,* 374 U. S. 807 (1963); *Lank v. State,* 219 Md. 433, 436, 149 A. 2d 367, 368 (1959); *Linkins v. State,*

---

4. Whereas we reaffirm the pronouncements of the Court in Corbin v. State, 237 Md. 486, 206 A. 2d 809 (1965), with regard to the legal principles discussed, we nonetheless now have reservations about the manner in which those principles were applied there in permitting, as a matter of form, an amendment of a larceny indictment with respect to the ownership of the property allegedly stolen. *See* pp. 6-10 *infra.*

202 Md. 212, 216, 96 A. 2d 246, 248 (1953); *Imbraguglia v. State,* 184 Md. 174, 180-81, 40 A. 2d 329, 332 (1944).

It was early noted by this Court that in charges of larceny, as well as in those statutory enactments that are members of the theft family such as receiving stolen goods, embezzlement, and false pretenses, there must be, as a substantive part of the charge, a proper averment as to the money or the nature of the property that is the subject of the criminal act, as well as its ownership. *See Flannigan v. State,* 232 Md. 13, 17-18, 191 A. 2d 591, 592-93 (1963) (false pretenses); *Wersten v. State,* 228 Md. 226, 228-29, 179 A. 2d 364, 365-66 (1962) (larceny); *Richardson v. State,* 221 Md. 85, 88-91, 156 A. 2d 436, 438-39 (1959) (same); *Linkins v. State, supra,* 202 Md. at 216, 96 A. 2d at 248 (same); *Imbraguglia v. State, supra,* 184 Md. at 179, 40 A. 2d at 331 (receiving stolen goods); *State v. Barrett,* 148 Md. 153, 156-57, 128 A. 744, 745 (1925) (larceny); *Armacost v. State,* 133 Md. 289, 292-93, 105 A. 147, 148 (1918) (false pretenses); *State v. King,* 95 Md. 125, 128, 132-33, 51 A. 1102, 1103, 1104-05 (1902) (same); *State v. Tracey,* 73 Md. 447, 449-50, 21 A. 366, 366-67 (1891) (embezzlement); *State v. Blizzard,* 70 Md. 385, 390-91, 17 A. 270, 272 (1889) (false pretenses); *Kearney v. State, supra,* 48 Md. at 23-27 (receiving stolen goods). This principle and its application to false pretense charges was considered by our predecessors in *Armacost v. State, supra,* the circumstances of which are so similar to those now before us that we conclude that case to be determinative of the issue presented here. In *Armacost,* from which we will quote somewhat at length because of its extensive and lucid treatment of this precept, the Court, speaking through Judge Urner, in holding invalid a false pretense indictment that failed to allege the nature and ownership of the "credits, goods and wares" to which that charging document made reference, explained:

> In the case of *State v. Blizzard,* 70 Md. 385, [17 A. 270 (1889),] an indictment for false pretenses was held to be demurrable because it did not name the owner or contain a sufficient description of the securities obtained through the alleged deception.

... This Court, in holding the indictment defective, partly on the ground that it did not allege the ownership of the securities, said, in its opinion as delivered by Chief Judge Alvey: "It is settled by all the authorities, that it is no less requisite in indictments for obtaining property by false pretenses, that the ownership of the property or securities obtained should be distinctly alleged, than it is that such averments should be made in indictments for larceny. The cases are numerous where it has been held that the omission to allege the ownership of property was fatal to the sufficiency of the indictment, even after conviction." [*Id.* at 390-91 [272].] The conclusion thus reached was not affected by statutory provisions which were then considered and are here relied upon, that "in any indictment for false pretenses, it shall not be necessary to state the particular false pretenses intended to be relied on in proof of same, but the defendant, on application to the State's Attorney before the trial, shall be entitled to the names of the witnesses and a statement of the false pretenses intended to be given in evidence" (Code [(1912)], Art. 27, sec. 498), and that "it shall be sufficient in any indictment * * * for obtaining any property by false pretenses, to allege that the defendant did the act with the intent to defraud, without alleging the intent of the defendant to be to defraud any particular person" (Code [(1912)], Art. 27, sec. 501). It was held in the case just cited, that "while there is no longer a necessity for specially alleging in the body of the indictment the particular false pretenses made use of by the defendant, as means of perpetrating the fraud, the indictment in other respects must have that degree of certainty and precision that will fully inform the accused of the special character of the charge against which he is called upon to defend, and that will enable the Court to determine whether the facts alleged upon the face of the indictment are sufficient in the contemplation

of law to constitute a crime; and, whether the trial be followed by acquittal or conviction, that the record may stand as a protection against further prosecution for the same alleged offense." [70 Md. at 388, 17 A. at 271.]

\* \* \*

The requirements as to the statement of ownership and nature of the property, in false pretense cases, were observed in the indictments under consideration in *Jules v. State,* 85 Md. 305 [, 36 A. 1027 (1897)]; *Carnell v. State,* 85 Md. 1 [, 36 A. 117 (1897)]; *State v. Edwards,* 124 Md. 592 [, 92 A. 1037 (1915)]; *Schaumloeffel v. State,* 102 Md. 470 [, 62 A. 803 (1906)].

In the present case, as in *State v. Blizzard, supra,* the allegation that the property was obtained from a designated person could not be held to be equivalent to an averment that he was the owner; and here the indictment gives no information whatever as to the nature of the property, while in the former case the indictment did describe, though imperfectly, the securities obtained by the alleged fraud.

The indictment before us must, therefore, be held insufficient unless it can be sustained upon the theory, submitted by the prosecution, that it follows the language of the statute by which the act of obtaining money, credit or property, with intent to defraud, by means of a worthless check, is treated and penalized as a special form of false pretense.

It is a settled rule that a statutory offense is sufficiently charged if the indictment describes it in the language of the statute by which it is created. *State v. Edwards, supra; Mulkern v. State,* 127 Md. [41, 96 A. 3 (1915)]; *Smith v. State,* 130 Md. [482, 100 A. 778 (1917)]. This rule has reference simply to the definition and characterization in legal terms of the

criminal offense to be alleged in the indictment. It does not affect the requirement that the indictment should sufficiently identify the specific charge intended to be preferred. In this instance the offense defined by the statute is the act of obtaining property, with intent to defraud, by means of a check for which no means of payment had been provided. Such an offense could be described in the language of the statute without any identity being given to the particular charge. In describing the check alleged to have been used as a false pretense the present indictment does more than follow the mere language of the statute, and furnishes an important part of the information which is held to be requisite in such cases. But in omitting any allegation as to the nature or ownership of the "credits, goods and wares," to which it thus indefinitely refers, it disregards a rule of criminal pleading which is useful and reasonable in its purpose and capable of being readily observed, and we must, therefore, hold that the demurrer should have been sustained. [133 Md. at 291-94, 105 A. at 148-49.]

In line with *Armacost,* we therefore hold that the amendment here constituted a substantive change that, being accomplished without the appellant's consent, violated Rule 713 and requires vacation of the conviction.

> *Judgment of the Circuit Court for Prince George's County reversed. Costs to be paid by Prince George's County.*