# STATE OF MARYLAND *v.* TYRONE A. MORTON ET AL.

[No. 71, September Term, 1982.]

*Decided March 3, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Philip M. Andrews, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Stephen B. Caplis, Assistant Attorney General,* on the brief, for appellant.

*John L. Kopolow, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

The question in this case is whether indictments charging the crime of "escape" under Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 139 (a) were properly dismissed for failure to contain a sufficient description of the particular acts alleged to have been committed by the accused individuals.

Section 139 (a) provides, in relevant part:

"If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, escapes he shall be guilty of a felony . . . ."

Morton and nineteen other inmates of the Brockbridge Correctional Facility (the institution) were indicted under this statute for the crime of escape. Each indictment stated that the accused, "late of [Baltimore] City, who was then and there under sentence to the Department of Correction, in said City," on a specified date,

"at the city aforesaid, unlawfully and wilfully did escape from such lawful detention and confinement, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State. (Art. 27, Sec. 139)"

It is undisputed that the inmates, during a part of their confinement, were permitted to leave the institution pursuant to a "work release" program established by the Department of Correction under authority vested in it by § 700A of Art. 27. Under the provisions of this statute, the inmates were authorized to leave the institution to work, to seek employment, or to attend school as part of a work release program. As a prerequisite to their participation in the program, the inmates were required by § 700A (b) to abide by the rules and conditions of the work release plan adopted for each of them by the Department. On the dates of their alleged escapes, the inmates were away from the institution, ostensibly under authority of the work release program. Each inmate allegedly violated the rules of the work release plan established for him or otherwise engaged in impermissible conduct, although each returned to actual confinement at the institution on the day of his alleged escape.

The inmates moved to dismiss the indictments on the ground that they

"d[id] not set forth a sufficient description of the particular act or acts alleged to have been committed by the Defendants as to enable them to properly defend themselves against the accusation or to prevent subsequent prosecution based on the same act."

The Criminal Court of Baltimore (Bell, J.) dismissed the indictments. It noted the argument of the inmates

"that given the factual circumstances of this case, particularly the fact that there is no allegation that they were outside the custody of the keepers and that the proof in this case would revolve around the violation of some rule of a work release program or deviation from acceptable conduct, the particulars of the acts must be alleged in the indictment in order to constitute the indictment a sufficient charging document."

The trial court concluded that the indictments were defective for failure to allege the particulars constituting the escapes.[1] In an unreported per curiam opinion, the Court of Special Appeals affirmed the trial court's dismissal of the indictments. The intermediate appellate court found the indictments insufficient because they failed to inform the inmates "of the particular act or specific conduct" upon which the charge of escape was based. We granted certiorari to decide the important question presented in this case.

As our cases make clear, one of the primary purposes of an indictment in Maryland is to fulfill the constitutional requirement contained in Art. 21 of the Maryland Declaration of Rights that each person charged with a crime must be informed of the accusation against him.[2] An additional requirement is that the charge must be sufficiently explicit to prevent the accused from again being charged with the same offense. *See, e.g., Jackson v. State,* 231 Md. 591, 191 A.2d 432 (1963); *Lank v. State,* 219 Md. 433, 149 A.2d 367 (1959); *State v. Carter,* 200 Md. 255, 89 A.2d 586 (1952); *State v. Petrushansky,* 183 Md. 67, 36 A.2d 533 (1944). Otherwise stated in the leading case of *State v. Lassotovitch,*

---

1. The trial court did not decide the issue of whether the indictments failed to charge a crime.

2. Article 21 provides, in pertinent part: "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence . . . ."

162 Md. 147, 156, 159 A. 362 (1932), every charge or accusation must include at least two elements, *i.e.:*

"First, the characterization of the crime; and, second, such description of the particular act alleged to have been committed by the accused as will enable him to properly defend against the accusation. In statutory crimes, where the statute includes the elements necessary to constitute a crime, the first of these requirements is gratified by characterizing the offense in the words of the statute; the second requires such definite and specific allegations as reasonably to put the accused on notice of the particular act charged, to enable him to prepare a defense and plead the judgment in any subsequent attempted prosecution."

These principles, in more modern dress, were reiterated most recently in *State v. Canova,* 278 Md. 483, 365 A.2d 988 (1976), and *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981). In *Ayre,* Judge Digges, for the Court, said that the purposes served by Art. 21 of the Maryland Declaration of Rights included:

"(i) to put the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (ii) to protect the accused from a future prosecution for the same offense; (iii) to enable the defendant to prepare for his trial; (iv) to provide a basis for the court to consider the legal sufficiency of the charging document; and (v) to inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case. . . . [I]n order to place an accused on adequate notice, two different types of information ought to be provided by the charging document. First, it is essential that it characterize the crime, and second, it should furnish the defendant such a description of the par-

ticular act alleged to have been committed as to inform him of the specific conduct with which he is charged.... As to the former of these dual requisites, where a statutory offense is alleged, it has generally been held in Maryland that, at least where the terms of the statute include the elements of the criminal conduct, the crime may be sufficiently characterized in the words of the statute. ... [I]n reference to the informative aspect of a charging document, failure of the accusation to contain information sufficient to advise the accused of the particular conduct alleged to have been committed renders the allegation subject to attack, and this requirement exists quite independent of the necessity to include all the essential elements of the crime." 291 Md. at 163-64 (citations omitted).

It is, of course, well recognized that a Bill of Particulars forms no part of the indictment; consequently, a defective indictment is not made sufficient by the provision of a Bill of Particulars. *Lassotovitch, supra,* 162 Md. at 158; *Delcher v. State,* 161 Md. 475, 158 A. 37 (1932). *See also* Maryland Rule 730.[3]

The State alleges that the indictments sufficiently charge the crime of escape. It contends that the indictments track the language of § 139 (a) and, therefore, adequately characterize the statutory crime of escape. The State also maintains that the indictments describe the acts with sufficient particularity by setting forth the date and place of departure and the custodian from whom the inmates escaped. It argues that the lower courts, in concluding that the indictments failed to contain an adequate description of the particular acts alleged to have constituted the escape, went "beyond

---

3. The Bill of Particulars is intended to guard against taking the accused by surprise by limiting the scope of proof at trial. Veney v. State, 251 Md. 159, 163, 246 A.2d 608, 611 (1968), *cert. denied,* 394 U.S. 948 (1969). Its purpose is " 'to secure facts, not legal theories.' " Hadder v. State, 238 Md. 341, 351, 209 A.2d 70, 75 (1965) (quoting Rose v. United States, 149 F.2d 755, 758 (9th Cir. 1945)).

determining whether the elements of the escape offense (departure from lawful custody), as particularized by date, place, and custodian, sufficiently put the [inmates] on notice of the crime charged."

The inmates make four contentions in support of their position that the indictments are defective. First, they argue that because the State's theory of "escape" includes "unremarkable kinds of behavior, the notice function of Article 21 is served only when the act in question is described and its time and place provided with greater precision." Second, the inmates maintain that the indictments would not protect them from a subsequent prosecution for the same offense. In their view, the State's theory is that each deviation from a work release rule is a separate escape. Thus, an inmate would be subject to as many prosecutions for escape as the number of rules that was violated. Moreover, they claim that because "the indictments fail to name the rule violated and the particular acts constituting the violation, they would provide no clue as to whether a second prosecution was for the same conduct as the first." Third, the inmates contend that the indictments do not adequately protect against the possibility of a material variance because the specific conduct upon which the Grand Jury indicted is not set out in the indictments; consequently, they could be convicted for a completely different act. Not knowing the conduct which caused the Grand Jury to indict, the inmates say that they would be unable to detect and contest a variance. Finally, the inmates argue that because the alleged escapes amount only to work release rule violations, the State was required to include in the indictments the specific infraction of the rules. Without greater specification in the indictments, as to the rules violated and the conduct constituting the violations, the inmates maintain that "the mere reference to an escape is nothing more than a legal conclusion rather than a description of the particular act alleged to have been committed."

We think that the trial judge erred in dismissing the indictments upon the ground stated by him. It is clear that

the indictments describe the act allegedly committed by the inmates by specifying the fact of their lawful confinement, their wilful departure from custody, the location of the escapes (Baltimore City) and the dates on which the escapes allegedly occurred. This information characterized the crime and sufficiently informed the inmates of the accusation against them as required by Article 21 of the Maryland Declaration of Rights. The State's legal theory with respect to the conduct constituting the escapes is inconsequential in the determination of whether the indictments adequately notified the defendants of the charge against them.

The indictments also particularize the acts sufficiently to protect the inmates from a second prosecution for the same offense. The inmates' argument that the State's theory of the case justifies greater particularity in the indictments is without merit, for the State's legal theory is not determinative of the legal sufficiency of the charging document to protect the accused from a second prosecution for the same offense. The State is not required in each case to set out in the indictment the details concerning the manner in which the accused escaped. A Bill of Particulars may be sought for that purpose. Moreover, should a second prosecution for the same offense be attempted, the accused could bar a retrial by producing the record of the case. *See, e.g., Spector v. State,* 289 Md. 407, 424, 425 A.2d 197, 205 (1981), *cert. denied,* 452 U.S. 906 (1981).

Nor are the indictments insufficient to guard against a material variance. While it is true that the evidence in a criminal case must not vary from those allegations in the indictment which are essential and material to the offense charged, the particular conduct relied on by the State to constitute the crime of escape in this case is not a necessary allegation. Hence, inclusion of these particulars in the indictments is not required to guard against a variance. The critical issue in this case is simply whether the indictments sufficiently charge the crime of escape and allege such facts as to put the accused on notice of the offenses with which each is charged and to prevent a future prosecution for the offense.

We conclude that the indictments do describe the acts allegedly committed by the accused with sufficient particularity, by setting forth the dates and place of the crime and the name of the lawful custodian from whom the accused persons allegedly escaped. Although the conduct upon which the State seeks to rely to constitute the crime may be novel, this alone does not mandate greater particularity in the indictments than is otherwise required.[4] The inmates may receive additional information concerning the conduct upon which the State intends to rely by filing a Bill of Particulars under Maryland Rule 730.

> *Judgments reversed; cases remanded to the Court of Special Appeals with directions to that Court that it remand the cases to the Circuit Court for Baltimore City with directions to that Court to vacate its judgments, reinstate the indictments, and conduct further proceedings consistent with this opinion.*
> *Costs to be paid by the appellees.*

---

4. We do not pass upon whether, in the circumstances, the crime of escape under § 139 (a) is committed if the State is able to establish its theory of the case.