490 A.2d 1277

James M. WILLIAMS, a/k/a Ike Brown

v.

STATE of Maryland.

No. 35, Sept. Term, 1984.

Court of Appeals of Maryland.

April 24, 1985.

788

Julia A. Doyle Bernhardt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Zvi Greismann, Asst. Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Reid Rubin, Asst. State's Atty., for Baltimore City, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

The question presented is whether the Circuit Court for Baltimore City was without jurisdiction to try appellant for robbery with a deadly weapon where the charging document failed expressly to allege an intent by the accused permanently to deprive the owner of her property.

## I.

The appellant was charged by criminal information as follows:

"The State's Attorney for Baltimore City, duly authorized by law, on his official oath informs the said Court that the above named Defendant(s), late of said City, heretofore on or about the date of offense set forth above, at the location set forth above, in the City of Baltimore, State of Maryland, unlawfully with a dangerous and deadly weapon did rob the Complainant of the aforesaid property, incorporated herein by reference as Exhibit A, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State."

Factual data elaborating upon the allegations of the charging document was contained in the title and caption of the information; it identified the accused, specified the date and location of the offense, the name of the victim and the nature of the property stolen ($20 current money).

The appellant made no objection at or during trial to the sufficiency or form of the charge contained in the criminal information. Upon his conviction of robbery with a deadly weapon, he appealed to the Court of Special Appeals. He contended that the information failed to state an offense and hence was fatally defective for lack of jurisdiction in the circuit court because it did not allege every essential element of the crime charged, i.e., it failed to assert an intent on appellant's part permanently to deprive the victim of her property. We granted certiorari prior to decision by the intermediate appellate court to consider the significant issue raised in the case.

## II.

■ A primary purpose of a charging document is to fulfill the constitutional requirement contained in Article 21 of the Maryland Declaration of Rights that each person charged with a crime must be informed of the accusation

against him.[1] *State v. Morton,* 295 Md. 487, 490, 456 A.2d 909 (1983); *Jackson v. State,* 231 Md. 591, 596, 191 A.2d 432 (1963); *Lank v. State,* 219 Md. 433, 436, 149 A.2d 367 (1959). More particularly, the purposes served by the constitutional requirement include (1) putting the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (2) protecting the accused from a future prosecution for the same offense; (3) enabling the accused to prepare for his trial; (4) providing a basis for the court to consider the legal sufficiency of the charging document; and (5) informing the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case. *Ayre v. State,* 291 Md. 155, 163–64, 433 A.2d 1150 (1981). We have repeatedly emphasized that every criminal charge must, first, characterize the crime; and, second, it must provide such description of the criminal act alleged to have been committed as will inform the accused of the specific conduct with which he is charged, thereby enabling him to defend against the accusation and avoid a second prosecution for the same criminal offense. *State v. Morton,* 295 Md. at 491, 456 A.2d 909; *Brown v. State,* 285 Md. 105, 109, 400 A.2d 1133 (1979); *State v. Canova,* 278 Md. 483, 498–99, 365 A.2d 988 (1976); *State v. Lassotovitch,* 162 Md. 147, 156, 159 A. 362 (1932).

It is fundamental that a court is without power to render a verdict or impose a sentence under a charging document which does not charge an offense within its jurisdiction prescribed by common law or by statute. *State v. Canova, supra,* 278 Md. at 498, 365 A.2d 988; *Putnam v.*

---

**1.** Article 21 provides "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence." The constitutional mandate has been implemented by Maryland Rule 4–202(a) (formerly Rule 711 d) which requires that a charging document "contain a concise and definite statement of the essential facts of the offense with which the defendant is charged and, with reasonable particularity, the time and place the offense occurred."

*State,* 234 Md. 537, 540–41 n. 1, 200 A.2d 59 (1964); *Baker v. State,* 6 Md.App. 148, 151, 250 A.2d 677 (1969). Manifestly, where no cognizable crime is charged, the court lacks fundamental subject matter jurisdiction to render a judgment of conviction, i.e., it is powerless in such circumstances to inquire into the facts, to apply the law, and to declare the punishment for an offense. *See Pulley v. State,* 287 Md. 406, 415–16, 412 A.2d 1244 (1980); *Urciolo v. State,* 272 Md. 607, 616, 325 A.2d 878 (1974).

■ Under Maryland Rule 4–252(a) (formerly Rule 736a), a motion alleging a "defect" in the charging document "other than its failure to show jurisdiction in the court or its failure to charge an offense" must be filed within a designated time period prior to trial or the defect is waived.[2] The rule provides in subsection (c) that a motion "asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time." A claim that a charging document fails to charge or characterize an offense is jurisdictional and may be raised, as here, for the first time on appeal. *See Putnam, supra; Baker, supra;* Maryland Rule 885. Where the claimed defect is not jurisdictional, it must be seasonably raised before the trial court or it is waived.

## III.

■ Robbery is a common law offense in Maryland and is within the jurisdiction of the circuit courts of the State. The crime is defined as the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear. *See Stebbing v. State,* 299 Md. 331, 351, 473 A.2d 903 (1984); *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378 (1973); *Hadder v. State,* 238 Md. 341, 354, 209 A.2d 70 (1965). The word "felonious" when used in connection with the taking of

---

2. For good cause shown, the rule permits the trial court to order otherwise.

property means a taking with the intent to steal. R. Perkins, Criminal Law 2nd ed. 279–80.

■ The information in this case charged that appellant unlawfully, with a dangerous and deadly weapon, did "rob" the named victim, at a specified time, and at a place within this State of $20. We think that these averments sufficiently charged and characterized the crime of armed robbery and thereby invested the circuit court with jurisdiction to try the offense. In common parlance, the word "rob" means "to take something away from (a person) by force: steal from ... [;] to take personal property from (the person or presence of another) feloniously and by violence or threat of violence." Webster's Third New International Dictionary 1964 (1976). The averment that the defendant "did rob" the victim plainly implies that the crime was committed with intent permanently to deprive the owner of her property.

■ As the criminal information sufficiently characterized the crime of armed robbery, it was not defective for lack of jurisdiction in the circuit court. Although the customary method of identifying the particular crime charged has been to aver its essential elements in the charging document, that is not the exclusive method, and the use of other words that sufficiently characterize the crime will satisfy the jurisdictional requirement. *See Putnam v. State, supra,* 234 Md. at 541, 544–45, 200 A.2d 59. This does not mean that the charging document will be immune from attack, for it may otherwise be deficient in failing to fully inform the accused of the specific conduct with which he is charged, and in that event a timely motion pursuant to Rule 4–252(a) may be filed.[3]

Neither *Ayre v. State* nor *Canova v. State,* both *supra,* upon which appellant places reliance, requires that we find

---

3. None of the cases upon which the dissent places reliance actually hold (albeit some may indicate) that to invest the court with jurisdiction over a criminal charge, every essential element of the crime must be alleged in the charging document.

the charging document in this case to be jurisdictionally defective as failing to charge an offense. In each of those cases averments essential to characterizing a statutory crime were completely omitted from the charging documents. We there concluded that motions to dismiss the indictments filed prior to trial should have been granted. As no such motion was filed in the present case, we need not consider whether the charging document was defective on a non-jurisdictional ground.

JUDGMENT AFFIRMED, WITH COSTS.

COLE, Judge, dissenting.

For close to two centuries the people in this State have been secure in the knowledge that they would not be subjected to trial on a criminal charging document that did not fully set forth the essential elements of the crime charged. Today, with no reasoned analysis to support its decision, the majority by judicial fiat wipes away that protection against unlawful official conduct. I, therefore, dissent.

The majority recognizes, as it must, that our prior decisions have made clear that Article 21 of the Maryland Declaration of Rights guarantees to each citizen the right to be informed of the accusation against him. Of the many purposes served by this constitutional requirement, two of the most important are to put the defendant on notice of what he is called upon to defend by characterizing and describing the crime, and to protect the defendant from future prosecution for the same charge.

The majority further acknowledges that our cases have held that where no cognizable offense is charged the court is deprived of jurisdiction to render a judgment of conviction or to impose a sentence of punishment, and that the defendant may attack the conviction and sentence at any time, including for the first time on appeal. Strangely, after making these concessions, the majority ignores the

plethora of Maryland cases that have consistently required the State to include all the "essential" or "material" elements of the crime in the charging document so as to guard against a wrongful prosecution. *See, e.g., Robinson v. State,* 298 Md. 193, 202, 468 A.2d 328, 333 (1983) ("Maryland law requires a charging document to include all of the essential elements of the offense charged."); *State v. Morton,* 295 Md. 487, 492, 456 A.2d 909, 912 (1983) (charging document must "include all the essential elements of the crime.") (quoting *Ayre v. State,* 291 Md. 155, 164, 433 A.2d 1150, 1156 (1981)); *id.* ("[necessary] to include all the essential elements of the crime [in a charging document.]"); *State v. Williamson,* 282 Md. 100, 108, 382 A.2d 588, 592 (1978) ("[I]ndictment shall allege fully the essential elements of the offense charged.") (quoting *State v. Wheatley,* 192 Md. 44, 50, 63 A.2d 644, 647 (1949)); *State v. Canova,* 278 Md. 483, 498, 365 A.2d 988, 997 (1976) (" '[I]t has always been held, that it is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged[.]' ") (quoting *Kearney v. State,* 48 Md. 16, 23–24 (1877)); *Cropper v. State,* 233 Md. 384, 390, 197 A.2d 112, 115 (1964) (indictment valid as to substance because "it alleged the necessary essential elements of the offense charged[.]"); *Pearlman v. State,* 232 Md. 251, 258, 192 A.2d 767, 771 (1963) (statutory short-form indictment must contain "the essential elements of the crime it purports to charge[.]"), *cert. denied,* 376 U.S. 943, 84 S.Ct. 797, 11 L.Ed.2d 767 (1964); *Lank v. State,* 219 Md. 433, 436, 149 A.2d 367, 368 (1959) ("[M]odern courts disregard extremely technical rules and require only that an indictment shall fully allege the essential elements of the offense charged."); *Shelton v. State,* 198 Md. 405, 409, 84 A.2d 76, 78 (1951) ("[I]t has become the modern policy of the courts to disregard extremely technical rules and require only that an indictment shall fully allege the essential elements of the crime charged."); *State v. Wheatley, supra,* 192 Md. at 50, 63 A.2d at 647 ("[T]he modern policy of the courts ... [is] to require only that an indictment shall

allege fully the essential elements of the offense charged."); *Neusbaum v. State,* 156 Md. 149, 156, 143 A. 872, 875 (1928) (the " 'all essential elements' " formula for indictments or informations applies in Maryland); *State v. Edwards,* 124 Md. 592, 595, 92 A. 1037, 1038 (1915) ("[I]t is a well settled rule of criminal pleading ... [that the indictment] allege all matters material to constitute the offense charged against the accused[.]"); *Kearney v. State, supra,* 48 Md. at 23–24 ("The want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication."); *Deckard v. State,* 38 Md. 186, 201 (1873) (indictment sufficiently charges an offense when "it sets forth the substance of the offense charged, and that all matters material to constitute the crime, are alleged with such positiveness and directness, as not to need the aid of intendment or implication."); *Whitehead v. State,* 54 Md. App. 428, 444, 458 A.2d 905, 913 ("[T]he failure to allege in the charging document the essential elements of a crime is fatal."), *cert. denied,* 296 Md. 655 (1983); *Brown v. State,* 44 Md.App. 71, 76, 410 A.2d 17, 21 (1979) ("While the adoption of the statutory form of indictment eroded most of the technical niceties which were required at common law, it did not dispense [of] the requirement that the charging document contain the essential elements of the crime."); *Andresen v. State,* 24 Md.App. 128, 153, 331 A.2d 78, 95 (1975) ("[W]here a charge fails to state an offense, by failing to allege all necessary elements of the crime, appellate review is not foreclosed by such failure."), *aff'd,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Baker v. State,* 6 Md.App. 148, 156, 250 A.2d 677, 683 (1969) ("[A]n indictment charging an offense ... should allege every substantial element of the offense[.]").

In concert with the above, the defendant challenges the information [1] as not charging an offense under the common law because it does not aver that the defendant robbed "with the intent to permanently deprive" the victim of her property. In addition, the defendant attacks this count as failing to comply with the statutory short-form for armed robbery because it does not allege that the accused "violently did steal."

## I

When the State charges a defendant with a completed crime in accordance with the common law, the State must include in the charging document the essential or material elements of the crime. This has been settled law in Maryland since at least 1873. *See Deckard v. State, supra.* The information in the case *sub judice* states in pertinent part:

> The State's Attorney for Baltimore City, duly authorized by law, on his official oath informs the said Court that the above named Defendant(s), late of said City, heretofore on or about the date of offense set forth above, at the location set forth above, in the City of Baltimore, State of Maryland, unlawfully with a dangerous and deadly weapon did rob the Complainant of the aforesaid property, incorporated herein by reference as Exhibit A, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State. (Art. 27, Sec. 488 & 489).

This count fails to charge the crime of armed robbery under the common law because it omits entirely the necessary larcenous intent (*animus furandi*) that constitutes an essential or material element of that crime. More to the point, the count does not aver that the defendant did steal from the victim with the intent permanently to deprive the owner of her property. Despite this fatal shortcoming, the

---

**1.** An information is a charging document filed in a court by a State's Attorney, while an indictment is a charging document returned by a grand jury and filed in a circuit court.

majority suggests that the common law crime of armed robbery is "defined as the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear." *Williams v. State,* 302 Md. 787, 792, 490 A.2d 1277, 1280 (1985) (citing *Stebbing v. State,* 299 Md. 331, 351, 473 A.2d 903, 912–13, *cert. denied,* —— U.S. ——, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984); *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 380–81 (1973); *Hadder v. State,* 238 Md. 341, 354, 209 A.2d 70, 77 (1965)). This definition, which is taken directly from a jury instruction approved by the *Hadder* Court, correctly states the law—as far as it goes. But had the majority bothered to read the sentence following that statement it would have learned that "[t]he crime [of robbery], however, *is not committed unless there is an intention to deprive the owner permanently of his property or the property of another lawfully in his possession." Id.* (emphasis supplied); *see also Stebbing v. State, supra,* 299 Md. at 351, 473 A.2d at 912–13 (a jury instruction that indicates that there must be a taking and removal with the intent permanently to deprive the owner of her property, and that violence must accompany or precede the robbery "correctly states the Maryland law."). Chief Judge Prescott, writing for a unanimous Court in *Hadder,* went on to state that "[w]e have definitely held that larcenous intent is an essential ingredient of robbery, . . . and we have no desire to recede from that position. This simply means that the robber must intend to steal the property taken, *i.e.,* permanently to deprive the owner (or the lawful possessor) of his property." *Hadder v. State, supra,* 238 Md. at 354, 209 A.2d at 77. So much for the Court's definition.

## II

From all appearances it seems that the State's Attorney in the instant case attempted to charge the defendant with armed robbery in accordance with the statutory-short form for that offense. This statute provides in full:

In any indictment or warrant for robbery with a dangerous or deadly weapon and attempt to rob with a dangerous or deadly weapon, it shall be sufficient to use a formula substantially to the following effect: "That A–B on the ...... day of ..... 19...., in the County (City) aforesaid *feloniously with a dangerous and deadly weapon did rob C–D (or did attempt with a dangerous and deadly weapon to rob C–D, as the case may be) and violently did steal (or attempt to steal, as the case may be) from him* ........ dollars (here list property stolen); contrary to the form of the Act of Assembly in such cases made and provided and against the peace, government and dignity of the State."

Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 489 (emphasis supplied). When the State elects to charge a defendant with a completed crime in accordance with the statutory short-form authorized by the General Assembly, it must substantially comply with that legislatively-prescribed form. *See Brown v. State, supra,* 44 Md.App. at 77, 410 A.2d at 21 (citing *State v. Ward,* 284 Md. 189, 396 A.2d 1041 (1978); *Williamson v. State, supra* ).

Here, the State failed to satisfy this requirement for two reasons. First, the State did not allege that the defendant "violently did steal" certain property from the victim. The omission of what the General Assembly deemed to be an essential element of the crime of armed robbery is not substantial compliance under any reasonable standard. Second, the State inserted the word "unlawfully" in place of "feloniously." These words are not synonomous. "Unlawfully" means "[i]llegally; wrongfully[,]" *Black's Law Dictionary* 1377 (5th ed. 1979), while "feloniously" is defined as "[o]f, pertaining to, or having, the quality of felony." *Id.* at 555. I simply fail to see how the term "unlawfully" puts a defendant on notice that he is being charged with a felony. From a defendant's standpoint, it is of utmost importance that he know whether the crime charged is a misdemeanor or a felony. The reasons appear obvious to me. A felony invariably carries greater punishment than a

misdemeanor, whether it be a greater fine or lengthier incarceration. In addition, upon conviction a felon forfeits various rights of citizenship. Based on these differences, the General Assembly appropriately required that the statutory short-form for armed robbery contain the word "feloniously."

Therefore, whether measured against the common law or statutory short-form, it is plain that the information here failed to charge armed robbery.

### III

To avoid this conclusion, the majority concocts an argument that is as remarkable for its internal contradiction as it is for its contrived nature. First, as indicated above, the majority defines robbery "as the *felonious* taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear." (Emphasis supplied.) Although this definition omits on its face the essential larcenous element of robbery, *see Hadder v. State, supra,* the majority nonetheless professes that the requisite mental element is supplied by the adjective "felonious." Second, with this non-sequitur firmly entrenched, the Court proceeds to explain that the averment "did rob" plainly implies that the crime was committed with intent permanently to deprive the owner of her property. The majority is able to reach this conclusion because the "common parlance" of "rob" carries with it the word "feloniously." Specifically, the majority tells us that a lay dictionary happens to define "rob" in terms of the word "feloniously." Third, and finally, the Court informs us that "[a]lthough the customary method of identifying the particular crime charged has been to aver its essential elements in the charging document, that is not the exclusive method, and the use of other words that sufficiently characterize the crime will satisfy the jurisdictional requirement." These arguments, considered separately or together, cannot withstand scrutiny.

The Court's initial premise that "felonious" supplies the requisite larcenous intent for armed robbery is without merit and, more important, contradicts the majority's "common parlance" approach. The common parlance of "felonious" does not suggest, not alone convey, the requisite mental element for armed robbery. The Court's approach, it must be remembered, rests on the assumption that the common parlance of a word is set forth in a lay dictionary. In view of this assumption, lay dictionaries define felonious as "of, relating to, or having the quality of a felony: being against the law[,]" *Webster's Third New International Dictionary* 836 (1981), or "of, like, or constituting a felony[.]" *Webster's New World Dictionary* 514 (2d ed. 1981). Given these rather prosaic definitions, it is not surprising that neither dictionary mentions the requisite mental element in defining "felony."

To arrive at the Court's definition of felonious a defendant has the option of referring to the legal treatise cited by the Court (R. Perkins, *Criminal Law* 279–80 (2d ed. 1969)) or a legal dictionary (*Black's Law Dictionary, supra*). The latter defines "felonious" as "[a] *technical word of law* which means done with intent to commit crime, *i.e.*, criminal intent." *Id.* at 555 (emphasis supplied). In the context of this case, it is manifest that felonious is a legal term of art whose definition differs considerably from its "common parlance." Although I cannot fathom the majority's reasoning, it is perhaps made more understandable if the Court is laboring under the misapprehension that criminal defendants tote *Black's Law Dictionary* or Perkins's treatise in their hind pockets as a matter of course.

The Court's second premise falls for the simple reason that its initial premise is unsound. By bootstrapping the word "felonious" onto the lay dictionary definition of robbery, the Court's argument collapses under its own weight. According to the majority, everybody knows what "rob" means. If in doubt, the defendant may resort to a lay dictionary to ascertain its meaning. Before today, I had not understood the law to require the defendant to resort to

sources outside the charging document to ascertain its meaning. In any event, it is no answer to say that the defendant knows that the term "rob" means that the defendant had the specific intent to deprive permanently a person of his property. Indeed, the "common parlance" of rob belies that fact. For instance, it is not uncommon to hear those not steeped in the terminology of the criminal law to say that a person "robbed" a store, an automobile, a house, a purse, or some other inanimate object. Newspaper accounts make similar statements on a daily basis, as do television and radio newscasters. Any first year law student, however, readily recognizes the misuse of the term "rob" in the above examples. Consequently, a charging document should not be rendered sufficient merely because the State deems a crime charged to be generally understood or that a particular word is defined in a lay dictionary. *See State v. Bussiere,* 118 N.H. 659, 662, 392 A.2d 151, 153 (1978).

The most alarming aspect of the majority's second premise is that it gives the prosecutor license to omit essential elements in other crimes because the "common parlance" of the named offense inferentially supplies the missing elements. The breadth of this premise gives one pause. For instance, an indictment charging a defendant with a specific intent crime, such as burglary, can conceivably omit the essential mental element (intent to commit a felony within a dwelling) but still pass muster by simply mentioning the term "burglary." Because "burglary" is defined in a lay dictionary I have every confidence that the majority would find that such a charging document sufficiently characterizes the crime. Moreover, taken to its logical conclusion, the majority's approach would sanction a murder conviction based upon an indictment omitting the essential element of "malice." I therefore expressly reject the majority's "implied element by common parlance" approach.

The Court's third premise is likewise flawed. According to the majority, an express averment of every essential element of an offense in a charging document is but one of

apparently several methods of charging a criminal offense. The Court bases its premise upon the exclusive authority of *Putnam v. State*, 234 Md. 537, 200 A.2d 59 (1964).

The information in *Putnam* charged the defendant with an *attempt* to commit a housebreaking of an outhouse. It did not charge the completed crime of housebreaking. The *Putnam* Court itself noted that an information for attempt need not be set out as fully and specifically as would be required in charging the actual commission of the crime. *Putnam v. State, supra*, 234 Md. at 545, 200 A.2d at 63 (quoting 4 *Wharton's Criminal Law and Procedure* § 1793, at 616 (Anderson ed.)).[2] The apparent rationale underlying this distinction is that the elements of the substantive offense related to the inchoate violation cannot be charged with the particularity that is possible after the offense has been completed. Without expressing an opinion on the soundness of this distinction, it is amazing that the majority can so easily ignore the careful distinction drawn by the *Putnam* Court without offering a morsel of analysis. The majority must be either intentionally disregarding or oblivious to the fact that the case *sub judice* does not involve an information charging an inchoate offense (attempt), but deals instead with a substantive completed offense (armed robbery). And the rule is that if the substantive or completed crime is charged then the charging document must aver every essential element thereof. As I see it, *Putnam's* precedential value is limited to inchoate offenses and has no application whatsoever to this case. Properly viewed, the majority's reading of *Putnam* seems particularly uncritical.

But even if I were to agree that *Putnam* bore some relevance to this case (and I do not), the majority's reliance upon *Putnam* is suspect for yet another reason. The

---

**2.** The current edition of this treatise states that "[t]he crime the accused is charged with having attempted to commit must be alleged, but it need not be set forth as fully as would be required in an accusation for the commission of such crime." 2 *Wharton's Criminal Procedure* § 286, at 114 (C. Torcia 12th ed. 1975) (footnote omitted).

*Putnam* Court placed exclusive reliance upon a two paragraph turn-of-the-century civil case from the Supreme Court of Alabama for the proposition that a charging document does not have to aver expressly every constituent part, component, or element of the offense charged. *Adams v. Coe,* 123 Ala. 664, 26 So. 652 (1898). The *Adams* Court held that it was sufficient under a statute for a criminal complaint before a justice of the peace to designate the offense by name. That court referred to legislative enactments designed to dispense with the fullness and precision in describing the offense that was necessary in an indictment at common law. In Maryland, because we have no corresponding statutory authorization, the charging document must comply with the common law or the legislatively-prescribed statutory short-form, both of which must contain the essential or material elements to characterize fully the offense charged.[3]

Finally, the Court makes much of the fact that the defendant in this case did not file a motion to dismiss at trial. The simple and correct answer is that he did not have to do so under Maryland Rule 4–252(a).[4] Because the

---

**3.** Interestingly, in buttressing its opinion upon the authority of *Adams v. Coe,* the Putnam Court became, and remains, the sole American jurisdiction to cite to Adams since the presidency of Calvin Coolidge. Viewed in this light, it is manifest that the majority's opinion rests upon a most slender and fragile reed.

**4.** Md.Rules 4–252(a) and (c) state:
(a) *Mandatory Motions.*—In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:
(1) A defect in the institution of the prosecution;
(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;
(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;
(4) An unlawfully obtained admission, statement, or confession;
(5) A motion for joint or separate trial of defendants or offenses.
\*      \*      \*      \*      \*      \*
(c) *Other Motions.*—A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense

failure to allege an offense is a jurisdictional defect, he could raise the issue for the first time on appeal. The Court also questions the defendant's reliance on *Ayre v. State, supra,* and *State v. Canova, supra.* Those cases indicated that the charging documents therein were fatally defective because each failed to include an essential element of the crime charged. In deciding those cases, this Court did not have to address the jurisdictional question because the defendant in each case filed motions before trial. There is no doubt in my mind, however, that if the issue had been squarely before the Court, it would necessarily have had to conclude that the challenges went to the very heart of the prosecution. Stated differently, both *Ayre* and *Canova* held that it was necessary to allege the essential elements of the crimes charged to meet the *minimum constitutional requirements* under Article 21. The clear import of these decisions is that the failure to allege the essential elements of a crime is jurisdictional.

## IV

Why the majority does not place the responsibility for defective charging documents where it belongs—on the State's Attorney—is a mystery to me. The State's Attorney is an elected official who is presumed to know the law and who is staffed by countless assistants, paralegals, clerks, and secretaries. It should therefore be a fairly simple task for him to charge an accused properly by including all essential or material elements in the charging document. This Court should not reward the State's Attorney for charging practices that fail to satisfy the minimum constitutional standard set forth in Article 21.

In my view, the majority has cast us upon a Kafkaesque course that will encourage prosecutors to engage in slip-

---

may be raised and determined at any time. Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial.

shod charging practices with impunity. Indeed, the Court in effect states that it is permissible for a charging document to contain *most,* but not all, of the essential elements of an offense. This result-oriented analysis is repugnant to Article 21, and represents yet another blow to established constitutional safeguards. Because the information in this case failed to characterize the offense, it is fatally defective. Consequently, the defendant can challenge it at any time. I would reverse the judgment of the Circuit Court.