# STATE OF MARYLAND *v.* GOVER

[No. 124, September Term, 1972.]

*Decided January 9, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Stuart E. Hirsch, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

*Edward C. Covahey, Jr.,* and *William F. C. Marlow, Jr.,* for appellee.

DIGGES, J., delivered the opinion of the Court.

We consider in this case whether voluntary intoxication can be a defense to an indictment charging robbery with a deadly weapon.

November 12, 1970 began for Walter F. (Buddy) Gover when he awoke at 6:00 a.m. feeling the ill effects of the previous night's drinking bout. As a remedy for his hangover, he chose a shot of whiskey from a bottle left from his prior evening's activities. Throughout that day he continued to pursue this remedy by electing to sustain himself with numerous beers, a large amount of

whiskey, and eight "bennies",[1] rather than eating anything more substantial. Several of his companions during that day, described Gover variously as "high", "like he was under the influence of some type of drug", "like he wouldn't be able to walk when he got out of the car" and "very drunk". In any event, there is no dispute that he had, over a two day period, imbibed more than an appreciable amount of alcohol.

At approximately 7:00 p.m. on the evening of the twelfth, Dale Tutor, an off-duty employee of the 7-Eleven store located at 20 Church Lane, Texas, Maryland, arrived at the store in his car and encountered an individual in the parking lot whom he identified as Gover. Because Gover frequented that particular 7-Eleven on a regular basis and was well known by the clerks at the store, Tutor was able to immediately recognize him. As he approached, he noticed that Gover had a pistol pointed in his direction; but, disdaining the firearm, he continued toward his assailant who demanded $35.00. Tutor informed Gover that he had no money and prevailed upon him to holster the gun. Gover, however, apparently felt an urgent need for funds and therefore proclaimed that he would rob the store instead. The two men entered the 7-Eleven store where Tutor attempted to convince the inebriate for fifteen or twenty minutes that as he was well known by the clerk on duty he could not possibly get away with the crime and would be crazy to attempt it. The bandit remained unconvinced and again drew his revolver telling Tutor to give him the cash in the register as well as three packs of Kool cigarettes. Because of the "little persuasion" of the gun, Tutor complied.

Gover claims that he is unable to recall these rather bizarre events occurring at the store. At trial he admitted that he was well acquainted with Tutor as well as the clerk on duty. And, while he was able to retrace some of his steps earlier that day, after these recollections, he

---

1. "Benny" is the street name for an amphetamine tablet, described by Gover in his testimony as "pills that make you high and keep you awake."

claims his mind is a blank until the evening of Friday, November 13 at approximately 7:30 p.m. when he awoke in the Baltimore County jail.

Following his arrest, the accused was tried and convicted of robbery with a deadly weapon by Judge Raine, sitting without a jury, in the Circuit Court for Baltimore County. In so doing, the trial judge declined to accept the defense's contention that Gover's drunken state could negate the specific intent needed to sustain an armed robbery conviction. Although the judge discussed the defendant's drunkenness and indicated his belief that Gover was quite intoxicated, he made no categorical factual determination as to whether he believed the accused to be intoxicated to such an extent that he was incapable of forming a criminal specific intent. The trial judge apparently felt that it was unnecessary to determine the extent of intoxication since he concluded that voluntary drunkenness, regardless of its degree, cannot serve as a defense so as to excuse an armed robbery charge.

Sobered by the judge's decision, Gover perfected an appeal to the Court of Special Appeals which reversed his conviction. *Gover v. State,* 15 Md. App. 163, 289 A. 2d 601 (1972). That court ruled that as robbery embraces all of the elements of larceny, and since larceny requires a specific intent to deprive the owner permanently of his property, to sustain a robbery conviction it is necessary to prove an accused has the requisite intent. The Court of Special Appeals concluded that the trial judge committed reversible error when he failed to recognize that the capacity to form the specific intent required for a robbery conviction could be destroyed by the excessive consumption of alcohol. Therefore, the case was remanded for a new trial in which a determination of Gover's ability to form a specific intent could be made. We granted the State's petition for certiorari to review whether voluntary intoxication can be a defense to an armed robbery charge. As we agree with the holding of the Court of Special Appeals, we affirm its judgment.

Since the defendant was convicted of robbery with a

deadly weapon, it is appropriate to begin with an examination of the definition of robbery. In *Hadder v. State,* 238 Md. 341, 354, 209 A. 2d 70 (1965) this Court quoted with approval the following definition of robbery which was contained in the instructions of the trial judge:

> "Robbery may be defined as the felonious taking and carrying away of the personal property of another from his person . . . by the use of violence or by putting him in fear. The crime, however, is not committed unless there is an intention to deprive the owner permanently of his property or the property of another lawfully in his possession."

It is clear that there can be no robbery without a larcenous intent. *Midgett v. State,* 216 Md. 26, 139 A. 2d 209 (1958). Therefore, as larceny is an ingredient of robbery, we look to the components of the former to ascertain the requisite mental element of the latter. Larceny is the fraudulent taking and carrying away of a thing without claim of right with the *intention of converting it to a use other than that of the owner without his consent. Brown v. State,* 236 Md. 505, 204 A. 2d 532 (1964) ; *Fletcher v. State,* 231 Md. 190, 189 A. 2d 641 (1963) ; *Putinski v. State,* 223 Md. 1, 161 A. 2d 117, (1960). Because an intent to steal, the *animus furandi,* must be present, it follows that larceny, and therefore robbery, is classed as a specific intent crime. This is true not only in this state but also in the majority of our sister jurisdictions.

Generally, voluntary drunkenness is no defense to a criminal charge. *Breeding v. State,* 220 Md. 193, 199, 151 A. 2d 743 (1959). The only exception to this occurs when a defendant, charged with a crime requiring a specific intent, is so drunk that he is unable to formulate that *mens rea.* His intoxication then will excuse his actions and serve as a defense. *Avey v. State,* 249 Md.

385, 240 A. 2d 107 (1968) ; *R. Anderson, Wharton's Criminal Law and Procedure,* §§ 44-45 (1957) ; *Clark & Marshall, A Treatise on the Law of Crimes,* § 6.09 (6th ed. 1958). However, for this defense to be available the impulse to commit a crime requiring a specific intent must arise subsequent to the drunkenness. *People v. Bartz,* 342 Ill. 56, 173 N. E. 779 (1930). Therefore, a criminal who conceives of his deed and then drinks to bolster his courage or to construct a defense, can gain no more than a headache. "Every man is presumed to be in possession of his mental faculties until the contrary is shown. As a defense to intent . . . the accused must show that he was so intoxicated that he was robbed of his mental faculties. He is criminally responsible so long as he retains control of his mental faculties sufficiently to appreciate what he is doing." *Beall v. State,* 203 Md. 380, 385-86, 101 A. 2d 233 (1953). This view has been accepted in the majority of jurisdictions in this country, and we are convinced that it is the better reasoned approach. Although we have recognized this as a defense in other specific intent crimes, *e.g., Avey v. State, supra* (intent to murder), the cases in this Court's reports have not heretofore dealt with a charge of robbery or larceny. We see no reason why this defense should not be extended to those crimes and do so now. Cases from other jurisdictions which have considered this defense in relation to larceny or similar charges have already done so. *See, e.g., People v. Reynolds,* 27 Ill. 2d 523, 190 N.E.2d 301 (1963) ; *People v. Soznowski,* 22 Ill. 2d 540, 177 N.E.2d 146 (1961) ; *People v. Arriola,* 164 Cal. App. 2d 430, 330 P. 2d 683 (1958) ; *Womack v. United States,* 119 App. D. C. 40, 336 F. 2d 959 (1964).

We hold that voluntary drunkenness can be a defense to a specific intent crime, but the degree of intoxication which must be demonstrated to exonerate a defendant is great. Evidence of drunkenness which falls short of a proven incapacity in the accused to form the intent necessary to constitute the crime merely establishes that

the mind was affected by drink so that he more readily gave way to some violent passion and does not rebut the presumption that a man intends the natural consequence of his act. *Director of Public Prosecutions v. Beard,* [1920] A. C. 479, 12 A.L.R. 846 (1920).[2]

Because of his erroneous interpretation of the law, the trial judge made no finding as to whether Gover was so drunk as to paralyze his mental faculties and render him incapable of entertaining the design to take and permanently convert the property of another to his own use. If the trier of fact determines that at the time the alleged criminal act occurred, the accused had become so inebriated that he possessed no reason or understanding, then he has reached that stage of intoxication that renders him incapable of forming the requisite *mens rea* which is a necessary element of all specific intent crimes. At a new trial this issue can be determined.

> *Judgment of the Court of Special Appeals affirmed. Costs to be paid by the County Council of Baltimore County.*

2. This leading English case reported in 12 A.L.R. 846 is followed by an annotation titled *Intoxication as Defense to Homicide* which reviews the English and American cases on this subject. 12 A.L.R. 861 (1921). This was supplemented by a similar annotation, *The Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge,* 8 A.L.R.3d 1236 (1966).