JERRY LEE PENNINGTON *v.* STATE
OF MARYLAND

[No. 655, September Term, 1982.]

*Decided January 11, 1983.*

The cause was argued before MOYLAN and LOWE, JJ., and FREDERICK A. THAYER, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*David P. Sutton, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Peter C. Cobb, State's Attorney for Harford County* and *Gerald S. Comen, Assistant State's Attorney for Harford County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Jerry Lee Pennington was convicted in the Circuit Court for Harford County of attempted breaking with intent to steal $300 or more, malicious destruction of another's property, and being a rogue and vagabond. The original charge was of attempting to break and stealing personal property having a value of $5 or more and was brought, along with the malicious destruction and rogue and vagabond charges, in the District Court. Appellant demanded a jury trial and on December 9, 1980 counsel entered his appearance.

The case was set for trial, but on January 21, 1981 the State sought and received a postponement. At the same time it also sought leave to amend the charging document to assert that the attempted breaking was with an intent to steal $300 or more. The postponement was granted; the motion to amend was not then decided. Apparently the trial

was set for March 11, 1981, but on February 19, 1981, it was again postponed, this time by defense counsel because of a schedule conflict. The next trial date was apparently set for August 6, 1981, nearly two months after the 180 day period prescribed by Md. Rule 746. At the hearing on that date appellant objected to "the State taking from March until now to schedule this case."

The trial judge denied the motion to dismiss but granted the State's motion to amend the charging document by permitting the State to substitute a charge of attempted breaking *with intent to steal* goods of the value of $300 or more, Md. Ann. Code, Art. 27, § 32, for the attempted breaking *and stealing* goods valued at $5 and upwards. Md. Ann. Code, Art. 27, § 33.

## I

Appellant argues that:

> "Because Appellant was not brought to trial within the 180 day period mandated by statute and Maryland Rule 746, the trial court erred in denying his motion to dismiss."

Initially, we note that there was no "motion to dismiss" offered by appellant orally or in writing.[1] After the jury was selected and seated, but before it was sworn, the court heard the motions that had been filed in writing prior to trial. As noted he granted a State motion to amend. He also granted a motion in limine filed by appellant. As the court prepared to take up a brief unrelated procedural matter, appellant's counsel interrupted with an afterthought.

> "MR. CLOSE [Defense Counsel]: Your Honor, one further thing which I brought up in chambers, that I would object to the State taking from March until now to schedule this case.

---

1. When counsel for appellant entered his appearance on December 12, 1980, he simultaneously moved for a speedy trial but never even inferentially moved to dismiss on that ground. We will, therefore, not address that constitutional question. Md. Rule 1085.

THE COURT: I'm sorry?

MR. CLOSE: This trial was first scheduled —

THE COURT: Oh, you're going on a Hicks situation. All right.

MR. CLOSE: Yes, your Honor."

The issue was briefly discussed and although the judge appears to have treated the objection as some sort of motion, appellant's sole argument consisting of a single sentence, did not so indicate.

"My contention is all that time from March to now, generally speaking, seems to me trials are scheduled within thirty days, and this one sat and sat and sat and sat until today and I don't think there's any good reason for it."

Having few facts before him the judge's response reflected the court's trial pressure of which the judge was judicially knowledgeable.

Parenthetically, we note that appellant's contention that the State violated a rule (Md. Rule 746) comes with ill-grace since he too has failed to comply with the rules, specifically Md. Rule 736. Sections c, d and e of that rule clearly anticipate something more than a last minute spinning hipshot that not only misses the mark but seems to have been pointed in no particular direction. A motion to dismiss (if that is what we are expected to treat this as), not being a limited mandatory motion, falls under the "other motions" category, capable of determination before trial.

"c. *Other Motions.*

Any other defense, objection or request capable of determination before trial without trial of the general issue *shall be* raised by motion *filed* at any time *before trial.*

d. *Content of Motions.*

A motion filed pursuant to this Rule *shall be in writing* unless the court otherwise directs, *shall state the grounds* upon which it is made, and *shall*

*set forth the relief sought.* A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments.

e. *Statement of Points and Authorities.*

Every motion *shall* contain or *be accompanied by a statement of points and citation of authorities. A response,* if made, *shall be filed within 15 days* and be accompanied by a statement of points and citation of authorities." (Emphasis added).

In *State v. Hicks,* 285 Md. 310, 318 (1979), the Court of Appeals, while holding that the provisions of Md. Rule 746 are of mandatory application, added that it is "binding upon the prosecution and defense alike . . . ." It went on to note as it so often has done, that the rules "are not mere guides or bench marks to be observed, if convenient." That is equally true in regard to Rule 736, especially in regard to raising a Rule 746 issue. It, like 746, is "binding on both prosecution and defense alike" and we hasten to add, if the rules are binding on both, there is a responsibility concomitant with their effects.

While the State must justify any violation of Rule 746, we hardly think that it must come to court on the trial date fully prepared for a hearing on a motion to dismiss, of which nothing has been suggested, let alone filed pursuant to Md. Rule 736. Implicit in Rule 736's procedural requirements of writing, grounds, relief, points and authorities and 15 days to respond is the opportunity for the State to prepare its justification for whatever is alleged and prayed by the appellant's motion.

The colloquy that ensued here is a classic reason for the need of such procedural rules. Although the prosecutor responded uncertainly when called upon by the court, appellant's counsel added little to the discussion but confusion.

"THE COURT: All right. Mr. Comen [State's Attorney], would you comment on that, please, sir?

MR. COMEN: Judge, there's very little I can

comment on other than the fact that when we came before the Court on January the 21st, at that time the Defendant was in the Harford County Detention Center and I at least saw part of the problem at that time, and rather than have him wait in the Detention Center an undue amount of time until the case came up, according to my notes, I went along with the fact that the Defendant would be released on his own recognizance. So he's been on the street since that time, I assume, unless he's had other problems that I'm not aware of.

The case was postponed on January 21st because the State at that time started Stebbing on that date.

And then it came up on February 19th. Again, according to my jacket facer, when it came up at that time, it was the Defense attorney that requested a postponement because he had a conflicting schedule.

MR. CLOSE: That's March.

MR. COMEN: I have it February. After that the case was routinely set in for trial. There's not too much I can say after that.

THE COURT: All right. Well, first set January 21st, bond reduction previously in December, at which time I denied any reduction of the bond. January 21st he was let out on his own recognizance.

It was then set for — set in for March 11th, and the Defense requested a postponement to try a case of State v. Alexander and the postponement was granted.

Now, I don't see anything at the moment about a February trial date.

MR. CLOSE: Your Honor, I don't think there was one.

There was a March 11 one and I did request a postponement then."

Assuming procedural compliance, a moving party has

some responsibility to show something other than a violation of the rule when he admits that he was granted the latest postponement. The very fact that appellant filed neither a motion to compel compliance with the 180 day rule despite the postponements prior to the expiration of that time, nor a motion to dismiss in accordance with Rule 746, substantively implies that he was not disturbed by the August trial date which appears to be the result of his request written and granted on February 19, 1981, to postpone the trial date of March 11, 1981. Although his precise objection at trial was to the time taken by the State "to schedule" the case, we must assume that it was "scheduled" well in advance of that date or appellant's complaint would have justifiably been lack of notice.

If customary practice may be inferred, appellant was apprised of the scheduled trial soon after his postponement was granted on February 19, 1981. Although he is not required to bring himself to trial (*Goins v. State,* 293 Md. 97, 110 (1982)), he may not cause a trial date to be deferred, then lie back knowing that the trial is scheduled beyond the 180 days to sandbag the State with an alleged rule violation. As Judge Wilner pointed out in *State v. Lattisaw,* 48 Md. App. 20, 28 (1981),

> "[d]efense Counsel presumably can count to 180 as well as prosecutors; they know when they entered their appearances — when the clock began to tick — and they can figure out when the time under the Rule expires."

When an accused has caused the clock to stop, *some* affirmative action on his part is required if he insists on strict conformity with the rule despite his interruption. The legislative purpose that there be a prompt trial of criminal charges, *Hicks, supra,* 285 Md. at 318, was, according to the sanction applied in *Hicks,* incidentally for the benefit of the accused. That purpose loses its meaning when the beneficiary drags his feet and does nothing to catch up.

Finally, we see no purpose in responding to appellant's complaint that

> " . . . routine docket congestion does not constitute
> good cause for postponement of a trial in violation
> of a defendant's statutory speedy trial rights."

The trial was not postponed for that reason. It was postponed
for the schedule conflict convenience of appellant's counsel
and we are not called upon to determine whether that consti-
tuted good cause since his own application waived such com-
plaint. Furthermore, *Hicks, supra* at 320, makes clear that
the Rule is on a different footing than the Sixth Amendment
right to a speedy trial, and *Goins,* at 110, emphasized that
distinction, and although we have addressed the Rule 746
violations issue as if it were predicated upon proper motion
to dismiss, appellant has clearly failed to raise a speedy trial
issue either below, Rule 1085, or here. Because appellant
failed to comply with Rule 736 and further failed to carry his
burden to show that the postponement he sought was not a
consent to the Rule's violation, we hold that a dismissal is
inappropriate. *Hicks, supra* at 335.

## II

The second issue raised by appellant is more easily
answered. We simply adopt the reasoning of the trial judge
as our response to appellant's contention that:

> "The State's erroneous use of a district court
> charging document deprived the Circuit Court of
> jurisdiction."

Appellant contends here, as he did below, that although the
offense charged was couched as an attempt to break, etc., in
actuality the charging document factually accused appellant
of an actual breaking, which is a felony. That issue was not
raised as a jurisdictional argument below and we need not
respond to it as such here, but the reasoning of the court
responding to appellant's motion for new trial is nonetheless
applicable.

> "The defense says that since the doors were pried
> apart, there was an actual, completed breaking and

that, therefore, the conviction for an attempt cannot stand. He cites *Sparkman v. State,* 3 Md. App. 527, 532 for the familiar formula, '[a]n actual breaking may be made by unloosing, removing or displacing any covering or fastening of the premises, such as lifting a latch, drawing a bolt, raising an unfastened window, or pushing open a door kept closed by its own weight.' In *Sparkman,* it should be noted that the window in question had been pushed in to allow access to the building. In this case, the doors were not pried apart enough to gain access.

*Farley v. State,* 3 Md. App. 584 (1968) would tend to dispose of defendant's contention in this case. In *Farley* the bars across a drug store window had been pried apart and the defendant was found nearby. The evidence was held to have sustained the defendant's conviction for attempted storehouse breaking, but the precise point raised here seems not to have been addressed.

Considerable discussion on the point now at issue took place at the time the defendant made his motion for judgment of acquittal at the end of the State's case. As the Deputy State's Attorney then pointed out, if the logic of the defendant's argument was accepted, it would be impossible ever to have an attempted breaking. An attempt requires an overt act in furtherance of the criminal intent, *Farley, supra,* page 587. If such overt act amounts to some injury to or opening of the premises which falls short of permitting access, and if the injury or opening be considered a completed breaking, there can never be a crime of attempted breaking. If an intruder totally fails to accomplish anything at all to open the premises, there would not be the required overt act. See also the discussion, below, of *Downes v. State,* 11 Md. App. 443."

## III

The State concedes error on the third issue which contends that:

"The court erred in permitting the prosecutor to amend the charging document to allege an offense based on a different statute."

*Thanos v. State,* 282 Md. 709, 716 (1978), supports the contention, as does *Brown v. State,* 285 Md. 105, 113 (1979), although it again appears that appellant's counsel's dilatory conduct precipitated the error. Either intentionally or negligently counsel delayed responding to the court request that he consent or object to the amendment when it was offered at the hearing on January 21, 1981. His first response to the court was delayed until August 6, 1981, when he decided then to object.[2] As pointed out by the judge, the docket entry for January 21, 1981 indicated that counsel was to respond somewhat more propitiously.

"Here's what it says: 'State requested to amend Count One to Article 27, Section 32, attempted breaking with intent to steal $300.00 or more. Defense counsel requested amendment be reserved until reviewed law. Court agreed to hold up until check law.' "

Absent appellant's consent, however, the granting of the right to amend was error. Md. Rule 713 a. The State now argues that despite its concession the error was harmless because

"Appellant had ample opportunity to prepare his defense knowing the way in which the State wished to amend its charging document."

Although that may be true, we cannot so assume from the

---

**2.** See Md. Rule 713 a relative to the right to amend charging documents other than indictments at any time before verdict. The rule permits a change in the character of the offense charged only with the consent of the parties.

record. Even if appellant had intentionally deferred his objection until called upon to respond, we cannot infer that his strategy rested upon the anachronism implicit in the original charge, *i.e.,* that appellant had "attempt[ed] to break ... and steal ...." The substituted charge was designed to overcome that illogical anachronism that one who attempts to break can steal (or even attempt to steal) personal property inside the building that has never been broken.[3]

There is a certain contradiction in the State's position that although there was admittedly a change in the charging document which altered the acts alleged to be committed which violated appellant's constitutional right, *Thanos, supra,* it was harmless error. The constitutional right violated is the right to be informed of the accusation against him in time to prepare his defense. If that is violated, it cannot be harmless. On the other hand, if he was adequately informed, there was no violation.

Finally, we note in passing that the State appears to have violated Rule 736 (d) as well. There is no record of a written motion, nor even a transcript of the hearing where a motion was offered in any form. The rules are precise rubrics, etc., "binding upon the prosecution and defense alike ...." *Hicks, supra* at 318.

## IV

Appellant next contends that a deputy's answers on cross-examination were in conflict with the State's answers upon discovery. The State had replied that it intended to use

---

3. Md. Ann. Code, Art. 27, § 33 reads as follows:

"Every person convicted of the crime of breaking into any shop, storeroom, filling station, garage, trailer, boat, cabin, diner, tobacco house or warehouse, although the same be not contiguous to or used with any mansion house, and stealing from thence any money, goods or chattels to the value of five dollars or upwards, or as being accessory thereto, shall restore the thing taken to the owner thereof, or shall pay him the full value thereof, and shall be guilty of a felony and upon conviction be sentenced to the penitentiary for not more than ten years."

"latent prints." The deputy testified that he had not dusted for prints and explained why he had not. Subsequently the appellant sought to read into evidence the State's answers to appellant's request for discovery arguing now that it attacked the credibility of the deputy.

The State conceded at the bench that its answer had been a mistake since review of the record disclosed that no prints had been taken. Certainly an erroneous response by a prosecutor does not necessarily relate to the credibility of a deputy sheriff.

Appellant also strains to bring these facts under *Eley v. State,* 288 Md. 548 (1980), which permitted the defense a right to comment upon the State's unexplained failure to produce fingerprint evidence. Appellant claims that he should have been permitted to prove that the State claimed it had, and would use, latent prints but nonetheless failed to produce them. He contends that such failure to rely on " 'a routine and reliable method of identification' " may be addressed by counsel, whether in closing argument or in the course of evidentiary presentation. While the major premise propounded is the law in the abstract, the minor premise is not the law nor does the syllogistic conclusion necessarily follow. Although *Eley* seems to permit an argumentative befogging of the issue to be decided, it cannot be stretched to permit an evidentiary duststorm.

Appellant had on his own initiative elicited from the deputy that prints were not taken and even why not.

"Q. Wouldn't it have been a good idea to dust for prints?

A. I didn't feel at the time it was because it was a bar, a public place, and the doors are well used by many people. If I would have developed a print, it possibly could have been explained away very easily by saying they had been at the bar earlier in the evening.

Q. Well, wouldn't a more recent print, one earlier in the morning, be over top of the public's prints if

somebody touched the door after the public used the property?

A. If, say, they had been there within the last ten or twelve hours, depending on the weather, whatever, the prints would all appear to be the same in recent — wouldn't be any way to determine them being recent unless it was, say, a real hot day, something like that, talking maybe ten, twelve hours, one may jump up a little more but one wouldn't pick up powder because it's dried more.

Another reason was, you know, there was no entry. All the prints found would be outside, not inside the building."

Appellant clearly could have argued that his *Eley* rights were supported by the evidence he elicited; however, the explanation so diluted his argument as to negate its effectiveness. He may not now try to recover his one-question-too-much oversight by forcing the State either to permit false impressions to go into evidence before the jury or to defend its position by producing testimony from the prosecutor (as explained to the judge) of its previous procedural error. To permit such a false issue to be tried as a case within the case is not a right an accused can claim, nor is it a privilege that a trial judge should accord.

Finally, even assuming appellant had argued here that this might have amounted to a suppression of exculpatory evidence as was suggested on motion for new trial below, we think the trial judge properly analyzed that suggestion.

"The defense had plenty of time between the discovery and trial to examine or inquire about any latent prints and to see what they portended. It seems a little late in the game for the defense to wait until trial or even after trial to say that the State may have withheld exculpatory evidence, the nature of which I was never made aware."

## V

His fifth contention that —

" [t]he court's instructions to the jury were so confusing as to constitute reversible error" —

comes too late at this stage. He failed to object timely at the trial and we decline to address his present complaint. Md. Rule 757 f; *Guardino v. State,* 50 Md. App. 695 (1982).

## VI

Finally, our review of the record provides us evidence-of-sufficient-evidence to conclude that appellant's convictions were not improperly reached. He addresses only the attempted breaking and the rogue and vagabond charge. He further argues that the latter charge and the malicious destruction charge should have merged with the attempted breaking.

The merger issue is made moot by our reversal of the attempted breaking, but because we will remand for retrial of the attempted breaking we note simply that the evidence that appellant and a companion were apprehended leaving a tavern in possession of a crowbar, wherein a criminal breaking had just been interrupted by an alarm, is of itself sufficient to permit an inference that the interrupted purpose was to steal, *Clemons v. State,* 228 Md. 237 (1962), and in accordance with *Burks v. United States,* 437 U.S. 1 (1978), to justify a retrial.

Appellant's argument that his attempted departure from the crime scene negates an inference that he was contemplating the commission of a crime, *Crossland v. State,* 252 Md. 70, 72 (1969), because there had already been a crime committed on the premises (malicious destruction and attempted breaking), is specious. In *Hall v. State,* 20

Md. App. 170 (1974), we pointed out the obvious, *i.e.,* that when any part of a substantive crime remains incomplete, the intent to complete it may be inferred from the circumstances in order to satisfy the contemplated commission aspect of a rogue and vagabond charge.

We will, therefore, reverse the judgment regarding the attempted breaking with intent to steal $300 and remand for retrial on that charge. In order clearly to provide appellant an adequate notice of the charge sufficient to establish his defense, we suggest that the correct charge be served upon appellant prior to any retrial. As we have noted, the record does not disclose that the amendment was ever reduced to writing. In fact, it appears that the amendment proposed at the untranscribed hearing on January 21, 1981, was an oral one with the only record of the proposal appearing here as a docket entry. That was not only apparently in conflict with Rule 713 a but a clear violation of Md. Decl. of Rts., Art. 21, that an accused is entitled

> "to have a copy of the ... charge, in due time (if required) to prepare for his defence ...."

We will affirm the convictions of malicious destruction of property and rogue and vagabond.

> *Judgments affirmed as to counts II and III in criminal case No. 8036; judgment reversed as to count I of criminal No. 8036; case remanded for retrial consistent with this opinion.*
>
> *Costs to be divided equally between the parties.*