# ANDREW JUNIUS MONGE v. STATE OF MARYLAND

[No. 1290, September Term, 1982.]

*Decided June 9, 1983.*

The cause was argued before ADKINS, ALPERT and BLOOM, JJ.

*Victoria S. Keating, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Richard D. Warren, State's Attorney for Wicomico County,* and *John P. Rue, Assistant State's Attorney for Wicomico County,* on the brief, for appellee.

BLOOM, J., delivered the opinion of the Court.

At approximately 11:00 p.m. on June 13, 1981, in Salisbury, Wicomico County, Maryland, the appellant, Andrew Junius Monge, repeatedly stabbed his girlfriend, Stephanie Davis, in the neck and chest with a knife. Appellant then picked the victim up, slung her over his shoulder and strode off. Shortly thereafter, the nude body of Ms. Davis was found near a railroad bridge trestle close to the scene of the stabbing. There were gaping wounds in her neck and body, the cause of her death being a puncture wound of the chest which penetrated her heart.

Appellant was apprehended the same night, and within ten days he was charged by criminal information with first degree murder. Eventually, on August 31, 1982, appellant was tried by bench trial in the Circuit Court for Wicomico County and was convicted of first degree murder. A sentence of life imprisonment was immediately imposed, and this appeal was promptly taken.

Appellant contends that the trial court erred 1) in refusing to grant his motion to dismiss the charge against him and 2) in its verdict.

— prompt trial —

The motion to dismiss was couched in terms of denial of a speedy trial and a violation of Md. Code Ann., Art. 27, §591. However, on appeal, appellant confines his assertion of error, vis-á-vis his motion to dismiss, to the claim of a violation of §591 and its implementing procedural rule, Rule 746. Consequently, if the allegation in the motion of denial of speedy trial was intended to assert an infringement upon appellant's constitutional rights as distinguished from the prompt trial requirements of §591 and Rule 746, that contention is deemed to have been abandoned.

Chapter 212 of the Acts of 1971 added to Article 27 "Crimes and Punishments" of the Annotated Code of Maryland a new section, Section 591, which reads:

> (a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court or the Criminal Court of Baltimore City in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than 180 days from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The

date established for the trial of the matter shall not be postponed except for good cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

(b) The judges of the Court of Appeals of Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the Criminal Court of Baltimore City and in the various circuit courts throughout the State of Maryland.

In *Young v. State,* 15 Md. App. 707 (1972), this court held that the language of §591 was directory, not mandatory. The Court of Appeals affirmed, summarily, in *Young v. State,* 266 Md. 438 (1972). However, in 1977, the Court of Appeals accepted the invitation of §591(b) and adopted Md. Rule 746.[1]

Rule 746 now provides:

a. General Provision.

Within 30 days after the earlier appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days[2] after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

b. Change of Trial Date.

Upon motion of a party made in writing or in open court and for good cause[3] shown, the county administrative judge or a judge designated by him may grant a change of trial date.

---

1. Superceding former Rule 740, adopted June 1, 1971, which provided merely that "the date of trial and postponements shall be governed by Code, Article 27, Section 591."

2. Originally "120 days." Amended to "180 days" November 16, 1979.

3. Formerly "extraordinary cause." Amended to "good cause" July 3, 1980.

In *State v. Hicks,* 285 Md. 310, on motion for reconsideration, 285 Md. 334 (1979), the Court of Appeals expressly overruled *Young v. State, supra,* and held that under Rule 746 the 180-day (then 120-day) time limit for trying a case was mandatory and that where the case is not tried within such period and there is no postponement of the trial date complying with the requirements of §591 and Rule 746, "dismissal of the criminal charges is the appropriate sanction," 285 Md. at 318. *Hicks* further held that dismissal of the criminal charge would not be an appropriate sanction for a violation of the 180-day time limit "where the defendant either individually or by his attorney seeks or expressly consents to a trial date in violation of Rule 746." *Id.* at 335.

The District Public Defender entered his appearance for appellant on July 2, 1981, at which point the 180-day clock started ticking. Since the trial did not begin until the 424th day after the clock started running, it is necessary for us to examine the record and determine whether appellant was entitled to dismissal of the charge against him for violation of Rule 746.

After appellant was arrested on the night of the crime, he was initially lodged in the Detention Center, awaiting trial, when he began to exhibit such behavior [4] that the Warden deemed it appropriate to have him transferred to Clifton T. Perkins State Hospital (Perkins). On June 19, 1981, upon certification of two physicians, appellant was admitted to Perkins for treatment. On June 23, 1981, the criminal information charging appellant with murder was filed. On July 2, 1981, the District Public Defender filed 1) an order to enter his appearance; 2) pleas of not guilty, not guilty by reason of insanity and not competent to stand trial; and 3) a motion for extension of time to file an election of court or jury trial, alleging that, "[t]he issue of defendant's competence and responsibility is questionable and he is presently in Clifton T. Perkins for evaluation." An extension was requested "until defendant is returned from said hospital."

---

4. Apparently, delirium tremens.

This motion appears to be based upon a local practice in Wicomico County of not assigning criminal cases a trial date until the accused made an election as to the mode of trial. The granting of this motion on July 6, 1981, interrupted the normal routine for scheduling cases for trial and thereafter nothing was done by the State, the court or the appellant to comply with Rule 746. Appellant was perfectly content to remain at Perkins in preference to standing trial. His attending physician, aware that there was no court order for evaluation on the insanity and incompetency pleas,[5] attempted to contact defense counsel and the state's attorney, but they apparently ignored his telephone messages. On December 3, 1981, for some unexplained reason, appellant's trial counsel filed pleas identical to those already filed on July 2 — not guilty, not guilty because insane, not competent to stand trial.

The 180-day time limit for trying the case, under Rule 746, expired December 30, 1981.

In January 1982, appellant, in order to avoid being returned to the Detention Center, voluntarily committed himself to Perkins. About that time, the medical staff decided to take him off medication.

Finally, on April 22, 1982, appellant's counsel filed a petition for mental examination by the Department of Health and Mental Hygiene, submitting a proposed order for such examination to be made at Perkins. On April 23, that order was signed with the additional requirement that the Department submit its report to the court within 10 days after the completion of the examination. This precipitated some action on the part of the state's attorney. He filed a "Motion to Extend Time," asking "that the period of time for setting of a trial date herein be extended to 30 days after receipt of Defendant's election of trial mode, and that the period of

---

**5.** There is no rational explanation for the failure of the state's attorney, defense counsel and the court to be equally aware of that fact.

time in which such trial must be held be extended to not later than 180 days after receipt of Defendant's election of trial mode," asserting "[t]hat it is not possible for the Assignment Commissioner of this Court to set a trial date until Defendant makes his election of Court or Jury trial."

Upon that motion, the Administrative Judge, on April 28, 1982, "for good cause shown therein," ordered that the setting of a trial date be extended to 30 days after receipt of the defendant's election as to mode of trial and that "the time in which the trial date shall be set is hereby extended to not later than 180 days after receipt of Defendant's Election of trial by Jury or trial by the Court."

On June 17, 1982, the Department of Health and Mental Hygiene submitted its report on the evaluation of appellant at Perkins, including diagnoses of chronic alcoholism, mixed personality disorder, and malingering. Appellant was opined to be competent to stand trial and to have been sane at the time of the offense.

On June 28, 1982, the case was assigned a trial date of August 31, 1982. On July 1, 1982, appellant elected a court trial, but the election was not filed until July 14, 1982.

Just prior to trial, appellant filed a written motion to dismiss the charge against him, for denial of his right to a speedy trial as well as for violation of §591.

We recognize that there was undoubtedly a salutary reason for the establishment of the circuit court's practice of not setting a trial date until the filing of an election of court or jury trial. Nevertheless, the practice is not sanctioned by and, indeed, may run afoul of the Maryland Rules. It was certainly not *impossible,* as the state's attorney suggested in his motion, to set a trial date prior to receipt of the defendant's election. Since, under Rule 735, a defendant having a right to a jury trial shall be tried by jury unless he waives that right, it is *possible,* if no election as to mode of trial is timely filed, automatically to set the case in for jury trial and later permit the accused to waive the jury if he so chooses. In our less populous counties such a procedure may be undesirable, as an unreasonable drain upon limited judicial resources, but not *impossible.*

If a case is scheduled initially for trial within the 180-day period, under Rule 746b it is possible, for good cause, to postpone it beyond 180 days, after which Rule 746 will no longer be applicable. *See Farinholt v. State,* 54 Md. App. 124 (No. 254, Sept. Term, 1982, filed April 6, 1983). In this case, however, we are not concerned with "good cause" for postponement under section b of the Rule because there was never any compliance with section a of the Rule.

The failure to perform the ministerial act of setting a trial date by August 1, 1981 (the 30th day after defense counsel entered his appearance) was a violation of Rule 746 but one for which dismissal of the charge is not an appropriate sanction. State v. Hicks, supra. The failure at any time to set a trial date which was not later than December 30, 1981 (the 180th day after July 2) was the second violation of Rule 746, for which dismissal of the murder charge against appellant would be a required sanction unless appellant sought or expressly consented to the violation.

The failure of appellant, during the 180-day period, to request an order for his examination and evaluation by the Department of Health and Mental Hygiene, upon his insanity plea, did not constitute seeking or expressly consenting to a delay in setting the case for trial. Nothing in Md. Code Ann., Art. 59 (1979 Repl. Vol.) [6] placed upon the defendant the onus of requesting and receiving an evaluation by the Department of Health and Mental Hygiene. Art. 59, §25(b) [7] provided that if a plea of insanity is filed, the court *may* order the Department to examine the defendant to determine whether he was insane and whether he is incompetent to stand trial. There was no requirement that such order be requested by the defendant; it could have been passed by the court upon motion by the state or upon its own motion.

We hold, however, that appellant's motion for an extension of time in which to file an election of a court or jury trial until his return from Perkins was tantamount to

---

**6.** Now Md. Health-General Code Ann., Title 12.
**7.** Now §12-109 of Md. Health-General Code Ann.

seeking or expressly consenting to a violation of Rule 746. When he filed that motion, appellant's trial counsel, as District Public Defender, was surely aware that under the practice of the Circuit Court for Wicomico County no trial date would be set until he filed a written document electing or waiving a jury trial. Knowing that, counsel's request for an extension of time to file that document until appellant was "returned" from Perkins included the necessarily implied request that the case not be set for trial until appellant was "returned" from Perkins. A request for a delay in the performance of one act, knowing that someone else will not perform a second one until the first is completed, necessarily · amounts to an express consent to a delay in the performance of the second act.

Appellant argues that despite the local practice, there is nothing in the rule or statute which permits the State to make the setting of a trial date contingent upon the filing of an election for court or jury trial. Indeed, as we have already noted, the local practice appears to be contra to Rule 735 as well as Rule 746. Such considerations might have significance if we were confronted with a claim of denial of the constitutional right to a speedy trial, but Rule 746 is not concerned with any balancing test as to blame or responsibility for delay in reaching trial. *Goins v. State,* 293 Md. 97 (1982). The validity or propriety of the local practice, *vel non,* is of no significance. What is significant is that appellant's counsel was aware of the practice and knew that the granting of his motion would result in an indefinite delay in the trial of the case.

Appellant next argues that when his counsel sought an extension of time for filing an election for mode of trial until appellant was "returned" from Perkins, counsel did not know and could not have anticipated that appellant would remain at Perkins, without evaluation, for more than 180 days. That, too, is irrelevant. Having derailed the normal scheduling process by his motion, appellant could have put the case back on track at any time thereafter by filing an election of court or jury trial. Indeed, on April 22, 1982,

appellant did take action designed to put the scheduling process in motion by petitioning for a mental examination, which led to evaluation and return of appellant from Perkins to the Detention Center, promptly followed by the setting of the case for trial. Thereafter appellant filed his election for a court trial, and it was not until the day of trial that the motion for dismissal of the information was filed. The post-December 30, 1981, conduct of defense counsel cannot be reconciled with a belief that appellant was entitled to dismissal of the information for violation of Rule 746. It was consistent only with a recognition of the fact that he had brought the scheduling process to a standstill, and it was up to him to get it started again.

As Judge Lowe pointed out in *Pennington v. State,* 53 Md. App. 538, 454 A.2d 879 (1983), *cert. granted* 295 Md. 690 (1983), although the Legislature's intent in enacting §591 was to ensure a prompt trial of criminal charges, *Hicks, supra,* 285 Md. at 318, the sanction for violation of the 180-day requirement, as established by *Hicks,* clearly benefits the accused. The benefit of the sanction is simply not available to an accused who brings the scheduling machinery to a stop and thereafter does nothing to start it running again, because "[i]t would . . . be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation." *Hicks, supra,* 285 Md. at 335.

— the verdict —

The asserted error in the verdict was in finding appellant guilty of first degree murder, in the face of evidence which appellant contends negated his mental capacity to form a specific intent.

Appellant concedes that there was no evidence of insanity resulting from drug or alcohol abuse. *See Porreca v. State,* 49 Md. App. 522 (1981). He relies, however, upon the proposition that intoxication not amounting to insanity is still a defense to a specific intent crime if the amount of alcohol or

drug consumed was of such quantity as to preclude the formation of the requisite *mens rea. State v. Gover,* 267 Md. 602 (1973).

Appellant points to evidence of his long history of severe alcohol abuse and the fact that several days after the stabbing of Stephanie Davis he began to suffer from delirium tremens, which was described as the result of withdrawal from alcohol following an extensive binge. There was also psychiatric testimony to the effect that appellant was prone to aggressive impulses, and that when intoxicated, such aggressive impulses would be increased because of the poorer judgment that an intoxicated condition entailed.

Appellant, however, not only denied being drunk on the day of the murder, he also insisted that the only alcohol he consumed that day was "two sips of wine" that morning. Furthermore, the circumstances of the crime itself were such as to indicate he had the mental capacity to form a premeditated intention to kill Ms. Davis. Appellant ran after her, dragged her out of an automobile, stated that he was going to kill her, threatened to shoot others who indicated an intention to come to the aid of the victim, and stabbed Ms. Davis repeatedly. That evidence was clearly sufficient to enable *any* trier of fact to find the essential elements of first degree murder, including *mens rea,* beyond a reasonable doubt. *State v. Rusk,* 289 Md. 230 (1981); *Jackson v. Virginia,* 443 U.S. 307 (1979).

Having concluded that the trial judge committed no error either in denying appellant's motion to dismiss the information or in finding appellant guilty of first degree murder, we affirm the judgment.

*Judgment affirmed.*
*Costs to be paid by appellant.*