516 A.2d 985

**Merlin Sherrill SMITH**

v.

**STATE of Maryland.**

**No. 116, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Nov. 6, 1986.

Clarence W. Sharp, Assigned Public Defender, Annapolis (Alan H. Murrell, Public Defender, on the brief, Baltimore), for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and David Moore, Asst. State's Atty. for Baltimore County, on the brief, Towson), for appellee.

Argued before WEANT, ALPERT and BLOOM, JJ.

BLOOM, Judge.

A Baltimore County jury convicted appellant, Merlin Sherrill Smith, of assault with intent to murder, shooting with intent to disable, unlawful use of a handgun in the commission of a felony, unlawful carrying of a handgun, and assault. The conviction for assault was merged into the conviction of assault with intent to murder. He received a sentence of 25 years for the assault with intent to murder, imposed under Maryland's Subsequent Offender Law, Md.Ann.Code art. 27, section 643B, and concurrent sentences of five years for each of the other convictions. We will reverse as to the convictions for assault with intent to murder, shooting with intent to disable, and use of handgun in the commission of a crime of violence, but affirm as to the other convictions.

*Facts*

At approximately 2:00 a.m. on June 20, 1985, Kenneth Munshower was shot while carrying a six-pack of beer to a car in the parking lot of his employer, the Seagull Inn. Witnesses to the incident identified appellant, Merlin Sherrill Smith, as the assailant. Testimony at trial indicated that Smith approached Munshower and demanded the beer, asserting that Munshower had purchased it on Smith's behalf. When Munshower refused to hand over the beer, Smith produced a handgun and shot Munshower in the head.

Appellant's counsel requested the court to give the jury an instruction concerning the effect of voluntary intoxication on the ability of the accused to form the necessary *mens rea* to commit the specific intent crimes with which he was charged. The court refused to do so, finding there was insufficient evidence of intoxication to warrant the requested instruction. Smith's counsel also objected to certain remarks by the State's Attorney during closing arguments.

*Issues*

Appellant raises the following issues:

I. Whether there was sufficient evidence of intoxication to warrant the trial court to give a jury instruction concerning voluntary intoxication as a defense to the crime of assault with intent to murder?

II. Did the trial court err in failing to sustain defense objections to statements made by the prosecutor during closing argument to the effect that the prosecutor was not trying to "stick it to an innocent man"?

III. Whether the State as a prerequisite to sentencing under Md.Ann.Code art. 27, § 643B has the burden of proving that appellant's guilty pleas on two prior convictions were made freely and voluntarily?

I

Appellant argues that the evidence adduced at trial was sufficient to require the court to instruct the jury on volun-

tary intoxication as a defense to the specific intent crime of assault with intent to murder.  We agree.

Although it has been stated that voluntary intoxication is no defense, *Saldeveri v. State*, 217 Md. 412, 143 A.2d 70 (1958), Maryland has long recognized that voluntary drunkenness can negate the *mens rea* element of specific intent crimes.  *See Spencer v. State*, 69 Md. 28, 13 A. 809 (1888). The Court of Appeals in *State v. Gover*, 267 Md. 602, 298 A.2d 378 (1973), described the level of intoxication necessary to constitute a defense.  After stating that the defendant "is criminally responsible so long as he retains control of his mental faculties sufficiently to appreciate what he is doing," *id.* at 607, 298 A.2d 378 (quoting *Beall v. State*, 203 Md. 380, 385–86, 101 A.2d 233 (1953)), the Court concluded:

> The degree of intoxication which must be demonstrated to exonerate a defendant is great.  Evidence of drunkenness which falls short of a proven incapacity in the accused to form the intent necessary to constitute the crime merely establishes that the mind was affected by drink so that he more readily gave way to some violent passion and does not rebut the presumption that a man intends the natural consequences of his act.

267 Md. at 607–08, 298 A.2d 378.

Dictum in *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982) implied that the circumstances in which voluntary intoxication negates *mens rea* are more narrow than the language of *Gover* indicates.  Citing to *Gover*, in a footnote, the Court in *Johnson* stated that the degree of intoxication necessary to negate *mens rea* is "comparable with that degree of mental incapacity that will render a defendant legally insane." *Id.* at 425 n. 10, 439 A.2d 542.  In *Shell v. State*, 307 Md. 46, 512 A.2d 358 (1986), however, the Court expressly stated that *Johnson* was not intended to overrule *Gover*.  *Shell*, at 64, n. 14, 512 A.2d 358.  *Gover*, therefore, continues to express the Court's view of the degree of intoxication required to constitute a defense to a specific intent crime in Maryland.

■ A trial judge, when requested to do so, is obligated to instruct the jury on every essential point of law supported by the evidence. *Waddell v. State,* 65 Md.App. 606, 613, 501 A.2d 865 (1985), *cert. denied,* 305 Md. 622, 505 A.2d 1342 (1986); *Tripp v. State,* 36 Md.App. 459, 463, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977). We believe there is sufficient evidence, "if deemed weighty and credible by the trier of fact," *Fisher v. State,* 28 Md.App. 243, 248–49, 345 A.2d 110 (1975), *cert. denied,* 276 Md. 743 (1976), to support a finding that Smith was so inebriated at the time of the shooting that he was incapable of forming a specific intent to kill Mr. Munshower.

Smith had consumed a large quantity of alcohol and drugs during the afternoon and evening prior to the shooting, which occurred around 2:00 a.m. on June 20, 1985. Between 3:00 and 4:30 p.m. on June 19th, Smith ingested three beers, three shots of schnapps and six ten-milligram valium pills. He then traveled to his mother's house where he consumed an additional two beers and three or four valium pills. Smith proceeded from his mother's to a bar, the Main Event. Although there was no evidence as to what, if anything, Smith ingested at the bar, there is a reasonable inference that he consumed some additional inebriants, for it may be "presumed he saith not a *pater noster*" there.[1] In any event, there was direct evidence that Smith had at least ninety milligrams of valium, five beers and three shots of liquor over a relatively short period of time.

---

1. Burton's *Anatomy of Melancholy,* Vol. 2 [1st Am.Ed.] part 3, sec. 3, mem. 1, sub. 2, quoted by Gaynor, J. in Kerr v. Kerr (N.Y.) 134 App.Div. 141 (1909) (evidence that a man met a woman not his wife at a railway station, took her to a hotel and registered her and himself under an assumed name as husband and wife, had a room assigned to them upstairs in the hotel and immediately ascended with her and her luggage in the elevator as if to that room and apparently remained there past midnight was held to be sufficient evidence of both opportunity and disposition to commit adultery to justify award of judgment of divorce to his wife).

Testimony concerning Smith's demeanor would also support a determination that he was highly intoxicated. A person with whom Smith rode from the Main Event to the scene of the shooting described Smith as acting "strange," "slurring," "down, drunk, unbalanced when he was walking." Moreover, the victim himself testified that Smith rendered his repeated demands for the beer in a "dull monotone" without raising his voice. This would appear to be a most unusual way for a person to make a demand of another. Smith's girl friend testified that when he arrived at her house about 2:30 a.m. (a half hour after the shooting) he was "drunk," "totally out of it," and "falling in the doorway." After she got him into bed, he passed out and slept six hours, after which he was taken to his mother's house where he slept until 11:00 p.m.

Additional significant testimony shedding light on Smith's state of consciousness at the time of the shooting concerns the manner in which he walked as he approached Munshower. Uncontroverted testimony disclosed that Smith had previously suffered an accident that caused him to walk with a definite limp and experience a great deal of difficulty maneuvering, even with a cane. At the time of the shooting, however, Smith was without his cane (having lost it at the Main Event) yet neither the victim nor any of the other witnesses noticed a limp or anything unusual about Smith's gait as he approached the victim. Apparently, Smith literally was "feeling no pain."

The State cites other evidence it asserts generates a different inference as to Smith's state of awareness. For example, the State notes there was no direct testimony that Smith consumed inebriants after the early evening hours. Moreover, Smith successfully traversed a quarter mile to his girl friend's house after the shooting. The State's contentions, however, go to the weight of the evidence, not its sufficiency. We need not choose between conflicting inferences; that is the role of the jury. *Cf. Hounshell v. State,* 61 Md.App. 364, 486 A.2d 789, *cert. denied,* 303 Md. 42, 491 A.2d 1197 (1985).

The evidence of intoxication presented by Smith is comparable to that found in other Maryland decisions sufficient to require a jury instruction. The Court of Appeals in *Avey v. State,* 249 Md. 385, 240 A.2d 107 (1967) held that an instruction on voluntary intoxication was warranted when the defendant produced evidence that he and another shared a pint of "moonshine" and 18 or 19 beers five or six hours before the defendant shot two policemen. The *Gover* Court held that a jury instruction was required when the evidence indicated the defendant consumed numerous beers, a large quantity of whiskey and eight amphetamine tablets over a 13–hour period prior to robbing a convenience store. *State v. Gover, supra,* 267 Md. at 603–04, 298 A.2d 378. Moreover, this Court in *Biggs v. State,* 56 Md.App. 638, 468 A.2d 669, *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984), implicitly expressed approval of the trial court's giving a jury instruction on voluntary intoxication when there was "some evidence that appellant was intoxicated at the time of the shooting." *Id.* at 648, 468 A.2d 669.

In contrast, those Maryland cases which hold that a jury instruction on voluntary intoxication was not warranted all involve considerably less evidence of intoxication than appellant produced at this trial. *See Myers v. State,* 58 Md.App. 211, 219, 472 A.2d 1027 (1984) (evidence defendant-conspirator may have been intoxicated on day conspiracy formed, but murder occurred six days later); *Monge v. State,* 55 Md.App. 72, 82, 461 A.2d 21 (1983) (defendant admitted to being sober on day of murder); *Bateman v. State,* 10 Md.App. 630, 637, 272 A.2d 64 (only evidence of intoxication was bartender's testimony defendant consumed two beers over a one and one-half hour period) *cert. denied,* 261 Md. 721 (1971); *Mock v. State,* 2 Md.App. 771, 775, 237 A.2d 811 (defendant testified he was not drunk), *cert. denied,* 250 Md. 732 (1968).

■ Because we believe that a reasonable trier of fact could conclude Smith was sufficiently intoxicated to lack the ability to form the specific intent to commit the crime of

assault with intent to murder, we reverse his conviction for that offense.

Although shooting with intent to disable (shooting, stabbing, assaulting with intent to maim, disfigure or disable, Md. Code Ann., art. 27, § 386) is also a specific intent crime, *see State v. Jenkins,* 307 Md. 501, 515 A.2d 465 (1986), appellant's brief and argument in this Court asserted error in the refusal to instruct the jury on the defense of intoxication only as to assault with intent to murder. Ordinarily, we would decline to address an issue not raised on appeal, but we exercise our discretion to do so in this case in the interest of judicial economy and to avoid an inevitable post conviction assertion of inadequate representation on appeal. Accordingly, we will reverse the conviction for shooting with intent to disable and, since the conviction for use of a handgun in the commission of a crime of violence was necessarily predicated upon guilt of either assault with intent to murder or shooting with intent to disable, Md. Code Ann., art. 27, §§ 36B(d) and 441, we will reverse that conviction as well.

## II

Appellant objects to the following remarks by the State's Attorney during his closing argument:

Because the State accepts the burden of proving this case beyond a reasonable doubt. We accept that burden as we do every time. And that burden is accepted because we don't come here to prosecute an innocent man.

．　　　．　　　．　　　．　　　．

... and I am standing here, yes, as an advocate, but I am standing here as a person who is not trying to stick it to an innocent man.

It is Smith's contention that these statements constitute improper and prejudicial declarations by the prosecutor of his personal belief in Smith's guilt. We disagree. With respect to the first statement, we read the prosecutor's remarks as merely indicating that the State has the burden

to prove its case beyond a reasonable doubt so that an innocent person is not convicted. Such a statement is hardly prejudicial. As to the second remark, even if it could be interpreted as an expression of the prosecutor's personal belief that appellant was guilty, the objection was not preserved for appellate review. If the accused was injured by the actions of the State's attorney, it was the responsibility of his counsel to complain of the injury and seek such appropriate relief as necessary to protect his right to a fair trial. *Niemoth v. State,* 160 Md. 544, 558–59, 154 A. 66 (1931). Smith's counsel raised a timely objection and requested specific relief: "Your Honor, all I'm asking is that [the State's Attorney] not express his personal opinion, that's all." Both the court and the State's Attorney agreed. Appellant received the relief he requested; thus, absent a motion for mistrial or cautionary instruction, there is nothing for this court to review. Md. Rule 1085. *Osborn v. State,* 301 Md. 250, 482 A.2d 905 (1984); *Blandon v. State,* 60 Md.App. 582, 483 A.2d 1320 (1984), *aff'd,* 304 Md. 316, 498 A.2d 1195 (1985).

### III

In light of our reversal of appellant's conviction for assault with intent to murder, we need not address his complaint about the imposition of a mandatory sentence for that offense under art. 27, § 643B. We do note, however, that appellant's primary argument with respect to section 643B was fully considered and rejected in *Middleton v. State,* 67 Md.App. 159, 178, 506 A.2d 1191 (1986).

JUDGMENTS REVERSED AND CASE REMANDED FOR NEW TRIAL AS TO CONVICTION FOR ASSAULT WITH INTENT TO MURDER, SHOOTING WITH INTENT TO DISABLE, AND USE OF HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE.

JUDGMENTS AFFIRMED AS TO REMAINING CHARGES.

COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY BALTIMORE COUNTY.